Filley *v.* King.

JAY H. FILLEY *vs.* DAN W. KING AND WIFE.

Where a debtor has made a fraudulent conveyance of his property, and afterwards makes an assignment in insolvency, the right to institute a suit against the fraudulent grantee to recover the property vests in the trustee in insolvency.

But where in such a case a trustee, after consulting the creditors, concluded that it was not expedient to expend the money of the estate in the attempt to recover the property, and intentionally abandoned the claim as an asset of the estate, it was held that the property was open to the attachment or levy of a creditor of the fraudulent grantor in the same way as if there had been no assignment in insolvency.

And it did not affect the case that the levying creditor had proved his claim against the assigned estate and taken a dividend with the other creditors.

BILL IN EQUITY to obtain the title to certain real estate claimed to have been fraudulently conveyed; brought to the Superior Court in Hartford County, and heard before *Hovey, J.* Facts found and judgment for the petitioner. Motion in error by the respondents. The case is sufficiently stated in the opinion.

*H. C. Robinson,* for the plaintiffs in error, cited *Swift* v. *Thompson,* 9 Conn., 69; *Shipman* v. *Ætna Insurance Co.,* 29 id., 245; *Adams* v. *Lewis,* 31 id., 507; *Paulk* v. *Cooke,* 39 id., 566; *White* v. *Griffing,* 44 id., 437; *Weise* v. *Wardle,* L. R. 19 Eq., 171; *Berry* v. *Gillis,* 17 N. Hamp., 9; 3 Parsons on Cont., 489; *Weber* v. *Samuel,* 7 Penn. St., 521; *Thomas* v. *Phillips,* 9 id., 355; *King* v. *Dietz,* 12 id., 156; *Allen* v. *Montgomery,* 48 Miss., 107; *Englebert* v. *Blaujot,* 2 Whart., 240; *Goodwin* v. *Sharkey,* 5 Abb. Pr. R., (N. S.,) 64; *Alsabrooks* v. *Cates,* 5 Heisk., (Tenn.), 271; *In re Meyers,* 2 Ben., 424; *Pratt* v. *Curtis,* 6 Bank. Reg., 139; *Thermond* v. *Andrews,* 13 id., 157; *Barton* v. *Bryant,* 2 Ind., 189; *McDowell* v. *Cochran,* 11 Ill., 31; *Sands* v. *Codwise,* 4 Johns., 536; *Mills* v. *Auriol,* 1 Smith Lead. Cas., 924.

*C. E. Perkins* and *R. Wells,* for the defendant in error,

cited *White* v. *Griffing*, 44 Conn., 446; *Smith* v. *Gordon*, 6 Law Reporter, 315; 1 Bouv. Law Dict., *Damnosa hereditas;* *Bourdillon* v. *Dalton*, 1 Peake, 238; *Mills* v. *Auriol*, 1 Smith Lead. Cas., 924; *Francklyn* v. *Fern*, Barnard. Ch., 30, 33; *Sands* v. *Codwise*, 4 Johns., 556, 601; *Freeman* v. *Deming*, 3 Sandf. Ch., 327; *Ft. Stanwix Bank* v. *Leggett*, 51 N. York, 552; *Dewey* v. *Mayer*, 72 id., 78; *Card* v. *Walbridge*, 18 Ohio, 411; *Phelps* v. *Curts*, 80 Ill., 109.

PARDEE, J.  In 1865 Dan W. King, one of the respondents, then insolvent, purchased a piece of land and paid for it with money taken from his business, and caused the deed to be made to his wife, with the intention to defraud his then and subsequent creditors.  On November 24th, 1869, he gave to the petitioner his promissory note for $4,547.13, payable at bank, to the order of the petitioner, two months from date, for merchandise.  The note not being paid when due, the petitioner brought suit upon it on the 27th of February, 1870, and attached the land aforesaid and recovered judgment on March 16th, 1875; execution issued on July 15th, 1875, and on the next day was levied upon a portion of the land, enough thereof being set off to the petitioner to satisfy the same.  Since the levy of the execution both respondents have continued to hold possession of and occupy the land levied upon, and refuse either to pay any part of the judgment or surrender any part of the land to him.  On January 27th, 1870, King made an assignment for the benefit of his creditors, under the insolvent laws of this state, to George Lee as trustee; on February 2d, 1870, Mr. Lee was appointed such trustee by the probate court having jurisdiction; he accepted the trust and rendered his final account as trustee on March 3d, 1875; this account was allowed, and without any order of court for that purpose he paid a dividend to all creditors, including the petitioner, who had proved their claims against the insolvent estate.  Mr. Lee offered to the creditors to attempt to set aside the conveyance by King to his wife, if a majority of them desired him to do so; no creditor re-

quested him to make the attempt, and he made none; he neither inventoried the land as a part of the estate, nor in any manner or form claimed or took action in reference to it. Proof of the fact of this assignment in insolvency was received by the court notwithstanding the objection of the petitioner.

The Superior Court ordered and decreed that the title to so much of the land as was set off upon execution, should be and was thereby transferred to and vested in the petitioner, Jay H. Filley.

The respondents filed a motion in error, alleging that all right to avoid the deed to Mrs. King was by Mr. King's assignment in insolvency vested in his trustee; that the petitioner lost all right to avoid the deed when Mr. King made his assignment in insolvency; that the petitioner, by proving his claim against Mr. King's estate under the assignment, lost all right to set aside the deed except through the trustee for all creditors; and that Mr. King's deed of assignment for all creditors vested all his interest in the land in the trustee, and that the same was not thereafter open to the levy of an execution by the petitioner.

King's deed of assignment in terms conveyed all of his property to a trustee, upon the trust to make a proportionate division thereof among such of his creditors as should prove their claims; and it was sufficiently comprehensive to convey the right to rescue in their behalf from the possession of Mrs. King the land which he had with her knowledge fraudulently purchased and caused to be conveyed to her.

The duty of the trustee was to pay, and the right of the creditors was to receive, the largest possible dividend; and they were not called upon to exchange certainties for uncertainties.

It must often happen that there will pass from the debtor to the trustee the right to possess in behalf of creditors land which in fraud of them the debtor has transferred or caused to be transferred to another. Whether it is for the interest of creditors to expend either their own or the money of the estate in contesting the possession with the

holder, may, after all accessible sources of knowledge are exhausted, remain quite uncertain, because of the fraudulent withholding of information by the debtor; and our insolvent law imposes no absolute obligation upon them to spend money in solving a doubt fraudulently created and continued by him; it assumes that they will reject nothing which has a seeming value.

Therefore the decision of the trustee and *cestuis que trust* that the right to contest the title of Mrs. King was a burden, and their persistent refusal to enforce it, constituted a rejection thereof; and after the termination of the trust under the deed, or upon an earlier decisive act of rejection by the trustee and the creditors, the obligation of the debtor, and the rights of his creditors in relation to this land, were as if no assignment had been made.

Unlike the bankrupt act, our insolvent law neither takes from the creditor, nor suspends, his right to sue; it simply removes all temptation to do so, in the case of an honest assignment, by taking from him the right to sequester by way of security any property which the trustee takes or has the right to take into his possession. Neither does it discharge the debtor from the obligation to pay the remainder by reason of the payment of a part of his debt.

The deed of assignment neither makes the trustee the depository of the creditor's right to sue nor gives him any power over it. Indeed it no otherwise affects the relation between the debtor and his creditors, than that no one of them can by the utmost diligence get more than his proportionate share of the property which the trustee subjects to the purposes of the trust. The completed proceedings under it determine nothing except the amount of the dividend; affect no rights except as a partial payment affects them; affect them precisely as would a partial payment made and received without the intervention of a trustee, the creditors by common consent refraining from attachment. The debtor remains under obligation to pay the balance; the creditors then have the right to sue, and under our law, when these conditions meet, they can attach and

appropriate land which he has fraudulently prevented from contributing to the dividend under his assignment. Those who are not sufficiently diligent to secure themselves by attachment can force the debtor again into the insolvent court and obtain their proportionate share of it. Neither the omission of the trustee to contest the title with the fraudulent possessor, nor the omission of the creditors to cause his removal for not doing it, nor their omission to do it at their own expense, all induced by the debtor's fraud, works in his behalf a forfeiture of their right to appropriate the land after light has been let in upon that fraud. The law assumes that every debtor will honestly deliver all of his property to the trustee, and that the division will be completed under one assignment; but if that end fails of accomplishment by reason of the debtor's fraud he is not to be heard to complain. The law will subject him to repeated proceedings in insolvency, until either his frauds are exhausted or his debts are paid.

This continuing right to all creditors to sue removes temptation and opportunity alike from any one of them to conceal from the others his knowledge of a fraudulent conveyance of land by the debtor in the hope of securing it wholly to himself. They are always able to compel him to share with them the fruits of his diligence in exposing fraud.

In the case before us Filley, by the levy of an execution upon the land, did not and could not withdraw it from other creditors; they had the power to compel him to share proportionately with them in the proceeds of it; he took nothing by concealment or secrecy; it is by their permission that he is paid and they are not; they were unwilling to assume the risk of expense, remained inactive, and suffered his levy to harden into an indissoluble lien, and allowed the statute of limitations to bar their own rights.

The insolvent law, having offered all creditors full opportunity to share proportionately in the whole estate of a fraudulent debtor, will not, because some of them persist-

ently reject it, deny, in behalf of such debtor, full payment to others who have been diligent.

There is no error in the judgment complained of.

In this opinion the other judges concurred.