THE QUINNIPIAC BREWING COMPANY *vs.* PATRICK H. FITZGIBBONS ET UX.

Third Judicial District, New Haven, June Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A conveyance made without consideration by a husband to his wife of more than three fourths of his property, leaving him an amount insufficient to pay his debts, is voidable by his creditors, although the transfer was made in good faith and with no actual intent to defraud them.

If the grantor's trustee in insolvency declines to take steps to have such conveyance set aside for the benefit of creditors, any one of them may proceed against the property for his own debt.

Argued June 14th—decided July 26th, 1898.

SUIT to set aside a voluntary conveyance by a husband to his wife, to foreclose a judgment lien, and for other equitable relief, brought to the Superior Court in New Haven County and referred to a committee by whom the facts were found and reported; the court, *Elmer, J.*, accepted the report of the committee and rendered judgment in favor of the defendants, and the plaintiff appealed for alleged errors in the rulings of the court. *Error, judgment set aside and cause remanded.*

The material facts found by the committee in this case are these: The defendants, Patrick H. Fitzgibbons and Catherine Fitzgibbons, intermarried in 1893. The husband, from 1882

up to 1896, had been engaged in the retail liquor business in Ansonia in this State. In January, 1897, the plaintiff obtained a valid judgment against the husband in the Court of Common Pleas for New Haven county, for $499.99, and in February of the same year it obtained, in the Superior Court for that county, another judgment against the husband, for $2,026.10. On the 25th of February, 1897, the plaintiff caused to be duly executed and recorded in the Ansonia land records, a certificate of judgment lien in the case of each of these judgments, upon two parcels of land with the buildings thereon in Ansonia. On the 30th day of January, 1895, and for a long time prior thereto, the premises covered by these two judgment liens were owned by the husband in fee, and stood in his name upon the land records. On that day, through the medium of a third party, he conveyed said premises to his wife by quitclaim deed, for the reasons and under the circumstances hereinafter stated. The deed to her was at once put upon record, and when the certificates of judgment lien aforesaid were recorded in February, 1897, the title to said premises stood in her name and had so stood since January 30th, 1895.

Substantially the only disputed question in the case was whether this conveyance to the wife was a valid conveyance, as against the plaintiff's judgment liens. It was made under the following circumstances: On the 30th day of January, 1895, said premises were subject to a mortgage of $3,000, and were then worth $3,000 over and above the mortgage. The husband had no other real estate save this, at that time, and no other property except "his saloon fixtures, stock of goods, State license, and good will of the business, of the value of about $1,000." He owed the plaintiff at this time $1,177.70 and another creditor $145.29, making a total indebtedness of $1,322.99. At this time the wife had money in bank to the amount of a little over $2,000, and she owned in her own right, free from incumbrance, two pieces of real estate in Ansonia. Prior to and at the time of the conveyance to his wife, the husband was paying as rent for his saloon and dwelling $50 per month, and he and his wife

thought that the rental expense might be reduced some by purchasing a piece of property called the Bridge street property, for the price of $4,500. To purchase the Bridge street property they would have to borrow $3,350, and they applied to the treasurer of a savings bank in Derby for a loan of that amount. The wife was accustomed to advise with the treasurer as to her business matters, and she then informed him of the desire of herself and husband to purchase the Bridge street property, and of its price, and asked his advice with reference to said purchase. She and her husband had planned to have the title to the Bridge street property taken in the husband's name. The treasurer did not approve of the purchase of the Bridge street property, but very strongly urged both the husband and wife, if the purchase was made, to have the title taken in the wife's name, inasmuch as most of the money for the purchase and improvement of it would be her money. The husband and wife finally agreed that the title should be so taken if the purchase was made. The treasurer told them, also, that in order to loan them $3,350, the bank would require real estate security of double that amount, and he would not consent to make the loan unless the husband would convey to his wife all his real estate, so that she could give a mortgage to the bank of all the real estate then owned by both of them. He also informed them that it would take all the real estate then owned by both of them, and the Bridge street property, to make the mortgage security double the amount of the loan asked for. He also told them that it would require every dollar they both could raise, to equal the purchase price of the Bridge street property and the proposed improvements. At the close of the interview the husband consented to transfer his real estate to his wife, "in order that the proposed purchase of the Bridge street property could be consummated . ... and in order to enable them to obtain the loan of the Derby Savings Bank, and to give the security in the manner required by said bank." The treasurer told the husband that if he was indebted to any extent the proposed deed to his wife would not stand, and the husband said he owed nothing but what

he could readily pay. The husband then conveyed his real estate to his wife, as hereinbefore stated. The Bridge street property was purchased in November, 1895, and the title was taken in the name of the wife alone. It was originally intended by the parties that this purchase and conveyance should be contemporaneous with the conveyance from the husband to the wife, but the delay was due solely to the inability of the grantor to make the conveyance until that time. Subsequently in November, 1895, the Derby Savings Bank loaned the defendants $3,350, and as security therefor took their joint and several note for that sum, secured by a mortgage made, signed and duly executed by both, covering the premises conveyed by the husband to his wife as aforesaid, the premises owned by the wife in her own name and right, and the Bridge street property. The wife drew her $2,000 from the bank and used it together with the amount borrowed from the savings bank, in the purchase and improvement of the Bridge street property. "She has also expended several hundred dollars more of her own estate in the improvement of said property." No money was paid by the wife to the husband for the conveyance of his real estate to her, "and there was no consideration for the same, except as herein stated. . . In the conveyance of his property to his wife, as herein set forth, there was no corrupt motive or actual fraudulent intent on the part of the defendant Patrick H. Fitzgibbons, to cheat or defraud his creditors who then had claims against him, or those whom he might subsequently owe. He acted in good faith, and was finally persuaded to convey his property to his wife " for the reasons hereinbefore given.

In January, 1896, the husband made an assignment in insolvency for the benefit of his creditors, and a trustee was appointed. The inventory of his estate amounted to $437.30, and the claims proved against it, which did not include the plaintiff's claims, amounted to a little over $2,500, nearly all of them, however, being for liabilities incurred after January 30th, 1895.

The trustee did nothing to compel a transfer of the prop-

erty conveyed to the wife by the husband, although one of the creditors in effect asked him to do so, and he settled his final account before the plaintiff brought this suit.

For several years prior to January 30th, 1895, the plaintiff had been supplying the husband with beer for his saloon, and they continued to deal together until March 27th, 1896. At this time the debit side of Patrick's account with the plaintiff was $6,489.28. Between January 30th, 1895, and April 2d, 1896, Patrick had paid on his running account the sum of $4,231.05, leaving the balance due $1,893.05. It was upon this claim that the before mentioned judgment obtained by the plaintiff in the Superior Court against Patrick was founded. The judgment in the Court of Common Pleas was founded upon a claim for goods sold and delivered after April 2d, 1896.

Upon these facts, contrary to the claims made by the plaintiff, the trial court rendered judgment for the defendants. The reasons of appeal are all based upon the alleged error of the court in rendering judgment for the defendants upon the facts found.

*V. Munger* and *Frederick W. Holden*, for the appellant (plaintiff).

*William S. Downs*, for the appellees (defendants).

TORRANCE, J. The real, and substantially the only, controverted question in this case, relates to the validity of the conveyance made by the husband to his wife on the 30th day of January, 1895, and many of the facts found and matters stated in the report of the committee have little or no bearing upon the settlement of this question. The decisive facts in the case are few in number and may be thus stated and summarized: The real estate so conveyed was worth, when conveyed, $3,000 over and above the mortgage upon it, and it was all the real estate that the husband then owned. Aside from this real estate, the property of the husband consisted of his fixtures in the saloon, which a year later

were inventoried for a very small sum, his stock of goods in the saloon, his State license to sell liquors, and the good will of the business; found by the committee to be worth about $1,000 in the whole. He then owed a little over $1,300. The conveyance was made without consideration, and was clearly a mere gift to his wife. It was made without actual intent to defraud his creditors, and for the reasons stated in the report. It was made in view of the fact that he was still to continue in business and to contract liabilities therein as before. At the time it was made the husband was indebted, and that indebtedness in whole or in part, down to the time of his insolvency, remained continuous and unbroken. With the property conveyed in his hands he was solvent and able to pay all his debts; without it he was insolvent and unable to pay his debts. These are the decisive facts in the case, and their legal effect and operation are not altered in the least by the other facts found.

Notwithstanding the special facts so found, it remains true that the conveyance in question withdrew from the creditors of the husband and gave to the wife for nothing, more than three fourths in value of the husband's property available for his debts. It left in him only certain personal property, not only insufficient then for the payment of what he owed, but constantly decreasing in quantity and constantly diminishing in value. It was an unreasonable conveyance under the circumstances; it left the husband unable to pay his debts, and it was made without consideration. This being so, it is of no consequence, so far as creditors are concerned, that it was made with no actual intent to defraud them. The effect of it upon them is substantially the same as if it had been made fraudulently in fact. It gave to the wife for nothing that which the law regards as belonging to the creditors, and under our law a debtor may not do this even though he acts in good faith, with no intention to prejudice such creditors. Such a conveyance, as against such creditors, is void, and may be appropriated by them in payment of their debts in the manner provided by law. *Salmon* v. *Bennett*, 1 Conn. 525; *Whittlesey* v. *McMahon*, 10 id. 137; *Redfield* v. *Buck*,

35 id. 328; *Paulk* v. *Cooke*, 39 id. 566; *Freeman* v. *Burnham*, 36 id. 469; *Barbour* v. *Conn. Mut. Life Ins. Co.*, 61 id. 240; *Trumbull* v. *Hewitt*, 62 id. 448.

The trustee in insolvency might have proceeded to have this conveyance set aside for the benefit of creditors, but he made no attempt to do it, though in effect requested to do so by one of the creditors; and he made his final settlement with the Court of Probate without attempting to avail himself of the property in any way. Upon the facts found upon this point the plaintiff is clearly entitled to proceed against this property. *Filley* v. *King*, 49 Conn. 211.

Upon the facts found in this case we think the conveyance made by the husband to the wife is void as against the plaintiff, and that the plaintiff is entitled to a decree of foreclosure as prayed for.

There is error in the judgment complained of and it is set aside, and the cause remanded to the trial court to be proceeded with according to law.

In this opinion the other judges concurred.