THE NEWTOWN SAVINGS BANK *vs.* GORDON B. LAW-RENCE ET AL.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Under our insolvent law the title which a trustee in insolvency acquires to the property of the debtor, as well as his powers and duties in administering the estate, are the same, whether the assignment is voluntary or compulsory.

After *L* had been adjudged an insolvent and a trustee had been appointed upon his estate, the plaintiff sought to foreclose a mortgage on his land, which for nearly two years it had neglected to have recorded and which was not recorded at the date of the trustee's appointment. *Held* that under § 2961 of the General Statutes, which declares that an unrecorded conveyance shall be ineffectual to hold lands against any one but the grantor and his heirs, the trustee in insolvency, as the representative of creditors, took the land in question unaffected by the mortgage to the plaintiff. (*Two judges dissenting.*)

Argued October 27th, 1898—decided January 4th, 1899.

SUIT to establish the existence of a lost unrecorded mortgage deed, to foreclose the mortgaged premises and for other equitable relief, brought to the Superior Court in New Haven County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants for alleged errors in the rulings of the court. *Error and judgment reversed.*

The trial court found the following facts : —

"1. On April 14th, 1892, the plaintiff loaned to the defend-

ant Lawrence $3,000, upon his demand note, secured by a mortgage duly executed upon the property described in plaintiff's complaint, without having had either search of the title made, or an appraisal. 2. On said day the title to said property stood in the name of said Lawrence, subject to a mortgage to the plaintiff of $7,000. 3. Mr. Lawrence had acted as the agent of the plaintiff on a number of occasions in negotiating for it loans in Waterbury, and the plaintiff had confidence in him. 4. The plaintiff caused said mortgage and note to be drawn and sent to the said Lawrence to be executed and returned to it. This was done, and because of its confidence in him the plaintiff sent to him by mail, after said mortgage had been duly executed and delivered to it, the mortgage to have the same duly recorded, together with a draft for the face of the loan, and retained the note. . . . 5. Lawrence neglected to have the same recorded, and it became lost. 6. On about March 10th, 1894, said Lawrence was adjudged an insolvent in the Court of Probate for the district of Waterbury, and the defendant Hart was duly appointed trustee of the said insolvent estate, and qualified and has since been acting as such trustee. 7. It did not appear in evidence whether Lawrence was adjudged an insolvent upon a voluntary or involuntary assignment. The court understood the assignment was a voluntary one, and so treated it. 8. Said Lawrence gave to Hart shortly after his appointment as trustee, a list of his property, and stated to him that the said property was subject to two mortgages, one for $7,500 on property at corner of Bank and James streets, and one for $2,500 on Bank street lot. 9. Said property subject to said $3,000 mortgage was included in the appraisal of said insolvent estate, and on May 10th, 1894, the said trustee received an order from the said Court of Probate to sell said property either at public auction or private sale. 10. The trustee paid the interest on such loan up to May 1st, 1895, in three different payments, under the belief that the plaintiff held mortgages upon said property aggregating $10,000. 11. On March 15th, 1895, the trustee procured a title search of said property, and ascertained that the mortgage in question did

not appear of record, and thereafter saw the plaintiff, and learned from it that it did not have in its possession such mortgage, and it has in fact never been found. Until so informed by the trustee, the plaintiff believed it had said mortgage duly executed and recorded in its possession. 12. Under said order the trustee contracted to sell said premises to the defendant Kelly on March 27th, 1895, and thereafter and before said sale was consummated, fully informed Mr. Kelly of the claim of the plaintiff that said premises were held by it as security for said $3,000 loan, the said note being at that time in the possession of the plaintiff, and known so to be by the trustee. 13. Thereupon Mr. Kelly declined to perfect such contract, unless he were guaranteed from loss, in consequence of which a deed containing such guaranty, and acceptable to him, was duly executed and delivered to Kelly, and he paid the consideration named therein, which was somewhat more than its actual value, and was purchased by Kelly because he owned other property in the locality."

Paragraph 4 of the complaint was as follows: "4. Since the execution and delivery of said deed, and since the plaintiff so sent the same to Waterbury for record, and before the plaintiff had discovered that said deed had been lost and had not been recorded, as alleged in paragraph 3, to wit, on the day of         , 18  , the said Gordon B. Lawrence made an assignment of all his property, including said real estate so mortgaged to the plaintiff, to the defendant C. H. Hart, as trustee in insolvency under the statute of the State of Connecticut in such case made and provided, and said Hart has qualified and is now acting as such trustee."

In his answer the defendant Kelly admitted that the defendant Hart was duly appointed trustee of the estate of Lawrence, and was duly qualified as such trustee; and alleged that he had no knowledge or information sufficient to form a belief as to the other matters alleged in paragraph four.

The defendant Hart, in answer to paragraph 4 of the complaint, admitted that Lawrence was adjudged to be an insolvent debtor upon the petition of a creditor of said Lawrence, and that he, Hart, was appointed trustee of his estate.

Newtown Savings Bank *v.* Lawrence et al.

The plaintiff replied to that part of Hart's answer that, except as admitted in the complaint, it had no information sufficient to form a belief.

*Edward F. Cole,* for the appellants (defendants).

It is the policy of our laws, and experience has demonstrated the wisdom of it, that the titles to real estate should be registered, for the benefit, not of the parties, but of the creditors, and all others interested. Gen. Stats. § 2961; *Pettibone* v. *Griswold,* 4 Conn. 161, 162. A deed of lands, unrecorded, is no evidence of title, nor can it be produced as such in court, against any other person but the grantor and his heirs. *French* v. *Gray,* 2 Conn. 92. Though it is a settled rule in equity, that if a person, with notice of a prior unrecorded deed takes a conveyance of the same property, he takes subject to the prior deed; yet this rule is founded in fraud of the party taking the second conveyance, and if, under the circumstances of the case, no fraud is imputable to that party, his title will not be postponed. *Wheaton* v. *Dyer,* 15 Conn. 307. Notice of a prior incumbrance in fact, which is void in point of law, will not affect the right of a legal incumbrancer. *Hubbard* v. *Savage,* 8 Conn. 214. In this particular case it makes no difference whether or not these proceedings in insolvency were voluntary or involuntary. Hart, the trustee, was the personal representative of the creditors, and not of the insolvent debtor. *In re Wilcox and Howe Co.,* 70 Conn. 220; *National Cash Register Co.* v. *Woodbury,* ibid. 321.

*Robert E. DeForest,* for the appellee (plaintiff).

The real question in the case is, does the trustee in insolvency take the property charged with, or free from, this mortgage? That the position of the trustee is utterly untenable, and that in the absence of fraud the trustee takes the property charged with all the equities that attached to it in the hands of the insolvent debtor, and stands in no better position than he did, seems to be the well-settled law in this and all other jurisdictions. *Hawkins's Appeal,* 34 Conn. 550; *Pal-*

*mer* v. *Thayer*, 28 id. 245; *Merwin* v. *Austin*, 58 id. 22; *Cooke* v. *Thresher*, 51 id. 105; *Shad* v. *Livingstone*, 31 Fla. 89; *Lockett* v. *Robinson*, ibid. 138; *Helen* v. *Gilroy*, 20 Or. 521; *Levy* v. *Chicago Nat. Bank*, 57 Ill. App. 143; *Rowell* v. *Daily*, 61 id. 557; *Hoover* v. *Burditt*, 153 Ill. 679; *Goff* v. *Kelly*, 74 Fed. Rep. 329; *Drew* v. *Drummon*, 44 Mo. App. 29; *Jacobi* v. *Jacobi*, 101 Ill. 512; *Williams* v. *Winsor*, 12 R. I. 12; *Bridgford* v. *Barbour*, 80 Ky. 535; *Ader* v. *Levi*, 137 Ind. 506; *Burnum* v. *London*, 25 Conn. 149; Jones on Mortgages (4th ed.), § 468; *Smyth* v. *Sprague*, 149 Mass. 310; 2 Sto. Eq. Jur. §§ 1228, 1229; *In re Howe*, 1 Paige, 128. Even if it should be considered that there was some degree of negligence in trusting the recording of the mortgage to the mortgagee, under the circumstances detailed in the record, yet there is not the least evidence to show, or reason to infer, that any creditor is worse off than he would have been had it in fact been recorded. The $3,000 which the bank loaned to Lawrence, presumably increased his property and his ability to pay his creditors by just that amount.

HALL, J. Neither of the defendants admitted the allegation of the complaint that Hart was appointed trustee under a voluntarily assignment of Lawrence. Both defendants admitted that he was duly appointed trustee. Further, as to his appointment, the defendant Kelly alleged that he had no information sufficient to form a belief; while the defendant Hart, himself the trustee, alleged that he was so appointed upon the petition of a creditor of Lawrence. Under these pleadings the burden was upon the plaintiff to prove that the proceedings in insolvency were voluntary, had that alleged fact been a material one. Practice Book, p. 16, Rule IV., § 4. In the absence of any evidence upon that point, it could not properly be assumed that the assignment was voluntary. From the fact that no proof was offered it would rather appear that the plaintiff was satisfied to accept the statement in the trustee's answer, that his appointment was under compulsory proceedings in insolvency.

But we do not regard it as material to the rights of the

parties in this case whether the proceedings in insolvency were voluntary or compulsory. The alleged voluntary assignment of Lawrence was " of all his property including the real estate so mortgaged to the plaintiff." A voluntary assignment in insolvency must, under the statute, embrace all the property of the assignor, with certain exceptions not material to this case. General Statutes, § 501. By § 507 of the General Statutes the trustee is appointed " to take possession of, manage, and dispose of " all the debtor's property, with certain exceptions, and all the property owned by the debtor " at the time of filing such petition,"with said exceptions, vests in such trustee.

If under a voluntary assignment the title of the trustee is by force of the common law, and in involuntary insolvency by force of the statute, he takes in either case the same title to the same estate. In neither case is the power of the trustee to take or recover as a part of the insolvent's estate, personal or real property, held or claimed by others, limited by the power of the debtor over such property. Preferences, sales and conveyances actually or constructively fraudulent, and which could not be avoided by the insolvent, may be set aside by the trustee appointed under voluntary or involuntary proceedings. *Shipman* v. *Ætna Ins. Co.*, 29 Conn. 245; *Gaylor* v. *Harding*, 37 id. 508. In case of a voluntary assignment in insolvency the right to reclaim property fraudulently sold is conveyed to the trustee by an assignment to him of all the debtor's property. *Filley* v. *King*, 49 Conn. 211. There seems to be no difference in principle, between the power of the trustee in such a case and that of a trustee under a general assignment in insolvency who is seeking to hold land claimed by the debtor's grantee under an unrecorded deed, provided such deed is invalid as against such trustee. Whether we regard him as an agent of the debtor, of the creditors, or of the law, we think the trustee in this case is clothed with the same power and charged with the same duty by our insolvent law, to take and dispose of the land in question for the benefit of the creditors of Lawrence, if the

assignment was voluntary, as in the case of compulsory insolvency.

Has the plaintiff under the $3,000 mortgage a valid title to the land in question, as against the trustee in insolvency? It is conceded that the defendant Kelly has no greater right than the trustee.

The facts are not those showing an attempt by the plaintiff to establish an equitable mortgage, or to enforce an equitable right. The plaintiff's only claim of title is by deed duly executed, and which it claims is valid under the statute against a trustee in insolvency. Its validity as against the grantor is not questioned. Whether it is also valid as against the trustee in insolvency, depends upon the construction to be placed upon our statute concerning unrecorded deeds, and the interpretation of our law regarding the powers of such trustee and his relation to the insolvent and his creditors. The right of the plaintiff to a judgment of foreclosure depends entirely upon the question of whether, as against this trustee, the mortgage in question is valid in law.

Section 2961 of the General Statutes provides that "no conveyance shall be effectual to hold lands against any other person but the grantor and his heirs, unless recorded on the records of the town in which the lands lie." The mortgage deed in question was executed in 1892 and, through the negligence of the plaintiff's agents, it has never been recorded, and has become lost. The defendant Hart was appointed trustee in 1894, and soon after his appointment was informed that in addition to the $7,000 mortgage, the real estate of the insolvent was incumbered by mortgage to the amount of $3,000. It does not appear that any of the creditors had notice of the existence of the $3,000 mortgage.

Though differing from the rule in some of our States, it is the law of Connecticut that the lien acquired by the attachment of a creditor of the grantor of a deed not recorded within a reasonable time, is superior to the title of the grantee of such deed, in the absence of notice to the attaching creditors of the existence of such deed. *Moor* v. *Watson*, 1 Root, 388, 389; *Welch* v. *Gould*, 2 id. 287; *Carter* v. *Champion*,

8 Conn. *549–559; *Wheaton* v. *Dyer*, 15 id. 307; *Hill* v. *Meeker*, 24 id. 211; *Barnum* v. *Landon*, 25 id. *137; *Bissell* v. *Nooney*, 33 id. 411; *Theall* v. *Disbrow*, 39 id. 318; *Pond* v. *Skidmore*, 40 id. 213; *Goodsell* v. *Sullivan*, ibid. 83. The creditors of Lawrence are creditors without notice, notwithstanding the notice given to the trustee after his appointment. *National Cash Register Co.* v. *Woodbury*, 70 Conn. 321.

Had there been no proceedings in insolvency, the creditors of Lawrence could have attached this land and by levy of execution appropriated it to the payment of their respective claims. This right of creditors to so avail themselves of this property has been suspended by the appointment of a trustee in insolvency. *New Haven Wire Co. Cases*, 57 Conn. 352, 387. By the proceedings in insolvency the creditors of Lawrence have not only been deprived of this right of attachment, but "all attachments and all levies of executions not completed made within sixty days next preceding" the commencement of such proceedings, if any such have been made, have been dissolved. General Statutes, § 523.

It was not the purpose of our insolvent law that the appointment of a trustee should place beyond the reach of creditors property of the debtor, which, in the absence of insolvency proceedings, could have been lawfully appropriated by attachment and execution to the payment of his debts. The liens by attachment and execution are dissolved, to prevent one creditor or class of creditors from gaining an undue advantage over others, and from thereby defeating the real object of the present insolvent law, namely, the equal distribution of the estate of the debtor among all of his creditors. By the process of attachment and of execution, that part of the debtor's property attached is appropriated to the payment of the claim of the attaching creditor. By the process of insolvency all the property of the debtor is sequestered for the payment of the claims of all the creditors. As proceedings by insolvency are only another method for appropriating the debtor's property to the payment of his debts, all the rights of creditors to take his estate by attachment can be enforced by such proceedings, and all the property of the debtor, with

the exceptions named in the statute, is thereby placed in the hands of the law for the benefit of creditors, and for the purpose of carrying out the provisions of the insolvency act through the medium of the trustee and of the Court of Probate; the trustee being not only the representative of the debtor and the agent of the law, but the representative of the creditors, and one who has the power, and whose duty it is, to enforce their rights against the property of the insolvent. *Swift* v. *Thompson,* 9 Conn. * 63; *Shipman* v. *Ætna Ins. Co., supra; Hawkins' Appeal,* 34 id. 548; *Taylor* v. *Atwood,* 47 id. 498; *Shaw* v. *Smith,* 48 id. 306; *Trumbull* v. *Hewitt,* 62 id. 448; *In re Wilcox & Howe Co.,* 70 id. 220; *National Cash Register Co.* v. *Woodbury,* ibid. 321.

The trustee in the case at bar was entitled to hold and dispose of the land in question as unincumbered by the $3,000 mortgage, because that mortgage not having been recorded within a reasonable time was not effectual under our statute to hold such land against the attaching creditors of Lawrence, and because, as against such attaching creditors, the property described in the mortgage deed remained in law the property of the mortgagor.

It is difficult to distinguish this case, in principle, from that of *In re Wilcox & Howe Co., supra,* very recently decided by this court. In that case the receiver applied to this court to have determined the relative rights of the receiver and of certain creditors, to certain machinery sold and delivered by such creditors to the Wilcox & Howe Co. under conditional contracts of sale, which, by statute, are made "absolute sales, except as between the vendor and vendee or their personal representatives;" and all personal property so sold is, by provision of statute, rendered "liable to be taken by attachment and execution for the debts of the vendee, in the same manner as any other property not exempted by law," unless such contracts are made in conformity with certain requirements of the statute, one of which is that they shall be "recorded within a reasonable time in the town clerk's office in the town where the vendee resides." Public Acts of 1895, Chap. 212, p. 563. Several of said contracts were defective because not recorded, and

also in other respects. .The only defect in one was the failure to record, as required by law. The law being that such conditional contracts were valid at common law (*Cohen* v. *Schneider*, 70 Conn. 505), the question was submitted to us whether, as against the receiver, the title to the property remained in the vendors, or whether the receiver had that right to the property which an attaching creditor would have had, and whether he might hold and dispose of the property for the benefit of all of the creditors of the Wilcox & Howe Co. It was urged by counsel, that in determining the question of title between the creditors and the receiver, when the contract was made in good faith and was valid *inter partes*, the receiver should be held to be the representative of the Wilcox & Howe Co., and not of the creditors. This court said in deciding the question: "The machinery covered by the conditional contracts of sale was, as to the creditors of the Wilcox and Howe Company, the absolute property of that company. It was available to the creditors in payment of their debts, and could have been appropriated for that purpose by attachment and levy of execution. When it came into the hands of the receiver of the insolvent corporation, the law sequestered it, on behalf of the creditors and for the benefit of all of them, as the absolute property of the corporation, just as fully and just as effectually as the creditors could have sequestered it by attachment and levy. For the purpose of making that sequestration effectual the receiver is the representative of the creditors, and holds the property, as they would have held it by proper proceedings, as the absolute property of the corporation. In a case like the present, a dispute as to the ownership of property between the receiver and the conditional vendors is, in effect, and must be regarded as, one between such vendors and the creditors of the conditional vendee."

The substance of this decision is that an unrecorded contract of conditional sale, free from fraud and valid at common law, made by statute ineffectual between others than the vendor and vendee, or their personal representatives, is invalid as against a receiver.

In *National Cash Register Co.* v. *Woodbury, supra,* this court

held that the absolute title to personal property held under an unrecorded contract of conditional sale, passed to the vendee's trustee under a voluntary assignment, notwithstanding the latter's knowledge, before the assignment, of such contract and its character.

The principle involved in the question presented by the case before us is the same, whether applied to conveyances of real estate, or to conditional contracts for the sale of personal property of the kind described in the two cases just referred to.

For the reasons stated there is error in the judgment of the Superior Court, and it is reversed as to the defendants Hart and Kelly.

In this opinion TORRANCE and BALDWIN, Js., concurred.

HAMERSLEY, J. (dissenting). The plaintiff owned an equitable interest in the land of the defendant Lawrence. I do not think Lawrence could destroy that interest by an assignment for the benefit of creditors. The plaintiff's remedy might be defeated by the act of an innocent third party which should create a superior equity,—such as a purchase by an innocent purchaser or an attachment by an innocent creditor. But the trustee in insolvency is not an innocent purchaser; he takes subject to the equity, and so far as he represents the creditors he can take no more. *Cooke* v. *Thresher*, 51 Conn. 105; *Merwin* v. *Austin*, 58 id. 22, 34.

If the assignment can be regarded as equivalent to an attachment by the creditors, it can only be so regarded in respect to the property assigned and the rights of the debtor; the plaintiff's equitable interest was not assigned.

This case is distinguishable from *In re Wilcox & Howe Co.*, 70 Conn. 220, which turned on the construction of a statute making an unrecorded conditional sale absolute as to all persons except the vendee and his personal representatives, and decided only that "personal representatives" as there used, did not include a trustee in insolvency, who represented both the debtor and his creditors. Such a decision does not justify the broad proposition that an assignment for the benefit of

creditors operates *ex proprio vigore* on the equitable rights of third parties in the same manner as a sale to an innocent purchaser or an attachment by a creditor without notice. The opinion involves this proposition and therefore I dissent.

In this opinion ANDREWS, C. J., concurred.