NATHANIEL SHIPMAN, TRUSTEE, *vs.* ÆTNA INSURANCE COMPANY AND OTHERS.

A trustee in insolvency is the agent of the creditors of the insolvent as well as of the law. He is the instrument by which, instead of by attachment, the property of the debtor is secured for their benefit, and any conveyance which would have been deemed fraudulent and void, as against attaching creditors, is equally void against him.

It is not enough, in such a case, that the contract of the debtor has created an equitable interest, which, as against the debtor, a court of equity would enforce.

*S*, in 1855, agreed to tranfer to *G* thirty shares of insurance stock to secure *G* for certain liabilities assumed for him, and delivered to him a certificate for the stock and a power of attorney to transfer it. *G* held these, without making any transfer on the books of the company, where alone a legal transfer could be made, and without giving notice to the company, until August, 1857, when the insurance company having made a dividend in stock, which required a change of certificates, *S* procured the certificate from *G*, for the purpose of exchanging it, and promised to transfer the stock to him on the books of the company, and bring him a certificate in his own name for the same. *S* failed to make the transfer and to deliver the certificate, and in January 1858 went into insolvency. Held, that *G* had no lien upon the stock which was valid against the trustee in insolvency.

*S*, in 1851, assigned to *H* in writing, to secure him for a liability assumed for *S*, fifteen shares of insurance stock, standing on the books of the insurance company in the name of *Y*, and delivered to him the certificate for the same in *Y*'s name. This certificate *H* delivered up to *S*, at his request, in 1854, to enable him to avail himself of a stock dividend then made, upon his promise to transfer the shares to *H* on the books of the company, and to procure and deliver to him a certificate in his own name therefor. *S* failed to make the transfer and to procure the certificate, and *H*, under the belief that it had been done, made no

demand upon *S*, and gave no notice to the company. In January 1858, *S* went into insolvency. Held that *H* had no lien on the stock which was valid against the trustee in insolvency.

*B* and *S* were indebted to *A* by their joint note. *A* calling on them for security, they agreed that they would each transfer to him fifteen shares of certain insurance stock, and that the stock of *S*, after securing the note, should be held by *A* as security to *B*, for certain liabilities assumed by him for *S*. *B* transferred his fifteen shares to *A*, and *S* went to the insurance office to transfer his, when it was found that all his stock had been attached by a creditor. The creditors of *S* soon after instituted proceedings in insolvency against him, the attachment being vacated thereby. Held that *B* acquired no lien whatever on the fifteen shares of the stock of *S*.

BILL in equity, brought by the petitioner as trustee of the assigned estate of John W. Seymour, to obtain the legal title to eighty-three shares of the stock of the Ætna Insurance Company, standing on the books of the company in the name of Seymour. Seymour had absconded, and the certificates of the stock were either carried away by him or were lost. Eliphalet A. Bulkeley claimed an equitable title to fifteen shares of the stock Benjamin W. Greene to thirty shares, and Mark Howard to fifteen shares; and Bulkeley, Greene and Howard were made respondents, with the Ætna Insurance Company, to the bill, and severally filed cross bills in the case. The petitioner had made demand of the insurance company, before bringing suit, for a transfer of the stock to himself as trustee, but the company had refused to allow the transfer, on account of the claims of the other respondents, of which notice had been given them, and because the certificates of the stock were not delivered up; the surrender of the old certificates being required by the rules of the company before such transfer. The facts, as found by a committee, were substantially as follows :—

On the 30th of January, 1858, the respondent Greene, and the said Seymour, were indebted to the Hartford Insurance Company, by their joint and several note for $1,200, and to Samuel Hamilton, by their joint and several note for $3,500, both notes having been given for the sole benefit of Seymour, and Greene being merely surety for him, and both having been given on or before the 2d day of July, 1855. On the 2d day of July, 1855, Seymour assigned to Greene, for his security as such surety, thirty shares of the stock of the Ætna Insurance

Company, which were owned by him, and gave him a power of attorney to transfer the same, and also delivered to him the certificates therefor. In the latter part of the summer of 1857, the Ætna Insurance Company, under authority of the legislature, doubled its capital stock, and Seymour shortly afterwards obtained from Greene the certificates for the thirty shares of stock, for the expressed purpose of delivering them up to the company, and receiving in return other new certificates for the increased number of shares, at the same time promising Greene to return to him certificates for thirty other shares of the stock, to be held by him upon the same terms and for the same purpose as the former. Greene thereupon delivered to him the certificates, only for the purpose of allowing him to exchange them for new certificates, and with no intention of releasing his lien thereon. Seymour received from the insurance company new certificates of stock in exchange for those obtained by him of Greene, but neglected to return to Greene another certificate, according to his promise, and Greene did not make demand on Seymour for a fulfillment of his promise. On the 30th of January, 1858, Seymour failed and absconded, and a few days after, and before proceedings in insolvency were commenced against him, Greene, for the first time, notified the insurance company of his claim to the thirty shares of stock, and presented to them his assignment and power of attorney, and requested the company to transfer the same to him; but the company refused, on account of his inability to surrender the certificates. Greene had since been compelled to pay the notes, and after applying certain other securities held by him, there remained due to him from Seymour, on account of the notes, the sum of $2,250.

On the 23d of December, 1851, the respondent Howard borrowed of the Hartford County Savings Association, of which Seymour was then treasurer, the sum of $2,900, and gave his note therefor, with interest at 8 per cent. Of this sum, $2,000 was borrowed by Howard for his own use, and the remaining $900 for the use of Seymour, and at his request; and Seymour, at the same date, gave to Howard his

own note for $900, of which, and the instrument attached to it on the same paper, the following is a copy:—

"$900. "Hartford, Dec. 23, 1851.

"On the 16th day of June, 1852, I promise to pay to the order of Mark Howard nine hundred dollars, with interest from date, at the rate of 8 per cent., for value received,

JOHN W. SEYMOUR.

"For value received I hereby sell and transfer to Mark Howard fifteen shares of Ætna Insurance Company stock, standing in the name of A. S. Beckwith, as collateral security for the above note of nine hundred dollars of even date herewith. If said note is not paid at maturity, said Howard is at liberty to sell said stock and apply the avails to the payment thereof, accounting to me for the surplus, if any.

"Dec. 23, 1851. JOHN W. SEYMOUR."

It was, at the time, agreed between Howard and Seymour that Seymour should pay to the Savings Association the interest of $900 of the $2,900 borrowed by Howard, which, when paid, should be equivalent to a payment of the interest on Seymour's note to Howard; and consequently, whenever afterwards Howard paid the interest on $2,000 of his note, Seymour, as treasurer of the association, gave him a receipt for the interest on the full sum of $2,900. It was also agreed that Seymour should secure his note to Howard, as Howard had been obliged to give stock security to the association for the full amount of his note; and Seymour, in pursuance of this agreement, executed the above assignment, and delivered to Howard a certificate for fifteen shares of Ætna Insurance Company stock, standing in the name of A. S. Beckwith, it being stock purchased of Beckwith by Seymour, but not transferred. In December, 1854, Seymour obtained the certificate from Howard, for the avowed purpose of surrendering it to the insurance company and receiving a new certificate; the company having, a short time before, declared a stock dividend, to obtain the benefit of which it was necessary to surrender old certificates; Seymour at the time promising to return to Howard another certificate for fifteen shares of the stock transferred to him, (Howard,) to be held by him as security

for the note of $900, on the same terms as the original certificate. Howard accordingly delivered the certificate to Seymour, upon this promise, and for the purpose of having the stock transferred to himself. Seymour had the fifteen shares of stock transferred to himself, but did not return any certificate to Howard, nor transfer any stock to him. Seymour's note, in consequence of its inclosing the certificate, was placed by Howard in a separate file, apart from his other notes, and on this account, and of the arrangement between Seymour and himself respecting the payment of interest on the note, it was seldom referred to by Howard; and after he took the certificate from the note and delivered it to Seymour, he did not refer to or see the note till after Seymour absconded. Having confidence in Seymour's promise to return the certificate, he rested without action in the matter, supposing that he had returned the certificate as agreed, and did not discover his error until Seymour had absconded, when, upon an examination of the note for the first time since the delivery of the certificate to Seymour, he ascertained the truth. He then immediately notified the insurance company of his claim to the fifteen shares of the stock. He has since paid the note for $2,900 to the Hartford County Savings Association in full. Seymour's note to him remains unpaid, and he has no security therefor except the fifteen shares of insurance company stock in question.

On the 20th of January, 1858, the Western Bank attached eighty-three shares of Ætna insurance stock standing in Seymour's name, in a suit against him, this being all the stock held by him in the company. After Seymour had absconded Greene and Howard in separate suits attached the same stock. All of these attachments were vacated by the proceedings in insolvency.

In the year 1855, the respondent Bulkeley and the said Seymour were indebted to the Society for Savings, in the city of Hartford, in the sum of $21,000, by their joint and several notes, the payment of which was secured by bonds and stocks as collaterals. The money obtained on these notes was equally divided between them, and each of them furnished one-half.

of the collaterals given as security, and it was agreed between them, at the time of making the notes, that the collaterals furnished by Seymour, should, subject to the lien of the Society for Savings, stand as security to Bulkeley for his liabilities on account of Seymour which were then of a large amount. These notes remained unpaid until January, 1858, when the society became dissatisfied with the security, and notified Bulkeley and Seymour that further security must be given or that the notes would be put in suit. Upon this Bulkeley called upon Seymour to see what could be done, and it was agreed between them that each should transfer fifteen shares of Ætna insurance stock to the Society for Savings, as further security for the notes, and that the stock transferred by Seymour should stand, after satisfying the claim of the Society for Savings, as security to Bulkeley for his liabilities on Seymour's account. On the 25th of January, 1858, Bulkeley transferred fifteen shares of the Ætna insurance stock to the Society for Savings as agreed, and informed Seymour that he had done so; and afterwards, on the same day, Seymour went to the office of the insurance company for the purpose of transferring his fifteen shares as agreed, when he found that all his stock had been attached by the Western Bank, and that he could not make a transfer of the same, and the transfer was never made. Bulkeley was at the time liable on Seymour's sole account, and without security, to the amount of $50,000, to other parties than the Society for Savings; all which amount, together with the notes to the Society for Savings, he has, since Seymour absconded, paid or is still liable to pay.

By the rules of the insurance company, a transfer of its stock could be made only on the books of the company. The proceedings in insolvency were instituted by the creditors of Seymour immediately after he absconded, which occurred on the 30th of January, 1858. The petitioner was appointed trustee of the estate. By the insolvent law all attachments made within sixty days before the institution of the proceedings in insolvency, were vacated.

Upon these facts the case was reserved for the advice of this court.

*L. F. Robinson* and *N. Shipman*, for the petitioner.

*E. A. Bulkeley* for himself; *Hooker* for the respondent Howard; and *Welch* for the respondent Greene. The Ætna Insurance Company did not appear.

SANFORD, J. This is a bill in equity brought by the trustee of the estate of John W. Seymour, an insolvent debtor, to procure the transfer by the Ætna Insurance Company to the petitioner, of eighty-three shares of the capital stock of that company, now standing in the name of Seymour, in order that it may be disposed of for the benefit of Seymour's creditors.

That the petitioner is the duly appointed trustee of the insolvent's estate is not denied, but the insurance company refuses to make the transfer, because the petitioner, not being possessed of the stock certificates, can not surrender them to the company as the regulations of the company require, and, because Mark Howard, Benjamin W. Greene, and Eliphalet A. Bulkeley, Esq., respectively, claim a lien upon large portions of the stock. No claim is made to the stock by any other person. Howard, Greene and Bulkeley, as well as the insurance company, are made parties to the bill, and have been fully heard upon the merits of their respective claims, so that the final decree of the court in this case will afford to the insurance company all the protection which it needs, in the execution of such order in relation to the transfer of the stock in question, as the court shall make.

The superior court has found that, in 1855, Seymour and Bulkeley were indebted to the Society for Savings in the sum of twenty-one thousand dollars, by their joint and several promissory notes, secured by the pledge of stocks and bonds, furnished by said debtors in equal portions; and that it was agreed between Seymour and Bulkeley, at the time of giving said notes, that the securities so furnished by said Seymour, should, subject to the lien of said Society for Savings, be for

security to the said Bulkeley for his other liabilities on the sole account of said Seymour, which were then of large amount ; that in January, 1858, the savings society being dissatisfied with the security which it held for the payment of said notes, demanded of Bulkeley further security, and threatened to sue the notes unless its demand should be complied with ; that thereupon Bulkeley informed Seymour of the demand of the society, spoke of his own liabilities on Seymour's account, told him something must be done, and suggested to him that if he, Seymour, would transfer to the society fifteen shares of Ætna insurance company stock for further security on said notes, and, subject to the lien of said society, as security to said Bulkeley for his liabilities on Seymour's account, he, Bulkeley, would also transfer to said society other fifteen shares of the stock of said insurance company as security for the payment of said notes, and that said Seymour, in consequence of the demands of said savings society and the suggestion of said Bulkeley, promised said Bulkeley to transfer fifteen shares of said insurance company stock to said savings society on those conditions ; that Bulkeley soon after transferred his fifteen shares to the society according to his proposition, and informed Seymour of the fact, and that Seymour thereupon attempted to transfer his, but was unable to do it because all his stock had been attached by another creditor.

The claims of Mr. Bulkeley, therefore, seem to rest entirely upon an unexecuted parol contract, and we can discover no foundation for any lien, legal or equitable, upon the stock in question. No assignment or power to transfer was ever made, no stock certificate was ever delivered to Mr. Bulkeley, and, at the time Seymour proposed to make the transfer, he had no power to do it, because of the prior levy of said attachment. In these respects the position of Mr. Bulkeley is less favorable than that of either Greene or Howard. But we think their claims also are not sustainable. Mr. Greene had incurred liabilities for Seymour, and to secure him for so doing, in July, 1855, Seymour gave him a written assignment of thirty shares of the stock in question, together with a power of attorney to transfer it, and delivered to him the stock certificates. The stock stood

in Seymour's name on the books of the corporation, no transfer was in fact made, and no notice was given to the insurance company of the assignment or power of attorney until after the stock had been attached by another creditor of Seymour, and after Seymour had become insolvent and absconded in January, 1858. In the summer of 1857, the insurance company, under the authority of the legislature, increased its capital, and Greene delivered the stock certificates which he held to Seymour to enable him to obtain new certificates for the increased number of shares to which he was entitled, Seymour. undertaking to return to Greene certificates for thirty other shares of the stock, to be held by Greene upon the same terms and for the same purpose as the former. Seymour surrendered the certificates thus received from Greene to the company, and procured new ones for the increased number of shares, but always retained them in his own possession, and was never requested to deliver any of them to Greene, pursuant to his promise. By the regulations of the company the actual transfer of its stock could be made only on its books and upon surrender of the stock certificate.

It is undeniable therefore, and is conceded, that the legal title to this stock remained in Seymour, up to the time of the appointment of this trustee. And whatever the effect of these transactions as between Seymour and Green themselves, as to attaching creditors of Seymour they could be of no validity. This stock, beyond all doubt, was liable to their attachments. " An attaching creditor is not bound to look beyond the books of the corporation to ascertain whether his debtor has made an assignment of the stock standing in his name. The books of the corporation are the appropriate place to determine the ownership of its stock." Waite, J., in *Dutton* v. *Connecticut Bank*, 13 Conn., 498. In order to protect a sale of tangible personal property, capable of immediate delivery, against the creditors of the seller, the purchaser must take and retain possession of the goods. If he does not, his purchase may be treated as fraudulent and void. The vendor's retention of possession is a badge of fraud which vitiates the sale.

Most striking and decisive badges of fraud, in our judgment, attach to these transactions in the case before us. Seymour held the apparent title on the books of the insurance company, he held for months the stock certificates, and dealt with both at the office of the company as with his own, thus exhibiting to the world every *indicium* of ownership, and exercising the same control and dominion over this stock as before its assignment to this respondent.

We entertain no doubt but that this stock was liable to attachment by any creditor of Seymour, notwithstanding the claims of Greene. It was in fact attached by the Western Bank, one of Seymour's creditors, and we see no reason why that bank would not have held it against Greene and all other claimants, but for the appointment of this trustee, and the operation of the statute under which he derives his title and his powers. Under that statute the petitioner is trustee for the insolvent's creditors. He is the instrument by which, instead of by attachment, the insolvent's property is secured for the benefit of creditors, and the agent of the creditors, as well as of the law, for the appropriation of that property to the payment of their debts. And a conveyance which is deemed fraudulent and void as against an attaching creditor himself, must be invalid also as against a trustee who stands in the place of and represents such creditor. *Swift* v. *Thompson*, 9 Conn., 63. *Chamberlain* v. *Thompson*, 10 id., 243. *Rood* v. *Welch*, 28 id., 157.

Liens created by attachment, and levies of execution, in certain cases, are by the express provisions of the statute dissolved, not for the benefit of the individual claimant of the property attached or levied on, but in order to increase the common fund arising from the insolvent's assets, for the common benefit of all his creditors. And the same statute which declares that such liens shall be dissolved, provides that the property " shall vest at once, free from such attachment " or levy of execution, " in such trustee." Rev. Stat., (Comp. 1854,) 514, § 3.

The question in this case is, not whether as between Greene and Seymour the former had such a title to the stock that he

could have enforced it against the latter, but whether the conveyance was of such a character that the creditors of Seymour, and this trustee in their behalf, might safely treat it as fraudulent and disregard it.

The case of Howard is in all material points like that of Greene and requires a like determination. The fact that the stock assigned to Howard originally stood in the name of Beckwith instead of Seymour, seems of no importance in the result, because it was with Howard's assent transferred to Seymour in 1854, and then a new certificate was issued to Seymour, and ever afterwards retained in his possession.

We have not been inattentive to the arguments addressed to us, nor have we overlooked the numerous authorities cited by the learned counsel for these respondents, to persuade us that the trustee's title to this stock is of course subject to the respondents' claims, because as against Seymour himself those claims could have been in a court of equity protected and enforced. But we think the views which we have thus expressed in relation to this question more in harmony with our own decisions, and more in consonance with the spirit and policy of our statute laws relating to attachments and to insolvency, than those which were so earnestly and ably pressed upon our attention by the respondents' counsel at the bar.

In our judgment the petitioner is entitled to the stock in question, and we advise the superior court to order and decree accordingly.

In this opinion the other judges concurred.

Decree for petitioner advised.