FRED B. BUNNELL, TRUSTEE, *vs.* NATHANIEL R. BRONSON,
TRUSTEE, ET AL.

Third Judicial District, New Haven, January Term, 1906.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

As the representative of creditors, a trustee in bankruptcy, like a trustee in insolvency, may avoid conveyances and assignments which, though valid against the bankrupt, are fraudulent as against his creditors.

For several years a bank made frequent loans to a manufacturing company taking merchandise accounts as collateral security therefor. In an action of interpleader to determine the title to the proceeds of these accounts, it was *held :—*

1. That upon the facts detailed in the record the trial court was amply justified in concluding that such accounts had been duly assigned, that creditors had been properly notified, and that, to the extent of its interest therein, the bank was the bona fide owner of such accounts as against attaching creditors or others claiming under the company.

2. That the fact that the company itself quite frequently collected the accounts it had thus assigned did not estop the bank from claiming that such collections were unwarranted and in violation of the agreement, the conduct of the bank in this particular being explained and justified by other facts of record.

3. That the claim of constructive fraud was not supported by the facts found.

4. That an offer by the trustee in bankruptcy to prove that the company was technically insolvent during the time of its dealings with the bank, unaccompanied with any claim or offer to prove that the bank, or even the company itself, had knowledge thereof, was

properly excluded, since it did not tend to prove actual fraud either upon the part of the bank or of the company.

Argued January 23d—decided March 8th, 1906.

ACTION of interpleader, brought to and tried by the Superior Court in New Haven County, *Robinson, J.;* facts found and judgment rendered awarding the larger portion of the fund to the First National Bank of New Haven, and appeal by the other claimant, Nathaniel R. Bronson, trustee. *No error.*

*Goodwin Stoddard* and *Seymour C. Loomis,* with whom was *Albert H. Jente,* for the appellant (Nathaniel R. Bronson, trustee).

*Henry C. White,* with whom was *John Q. Tilson,* for the appellee (the First National Bank).

TORRANCE, C. J. The E. S. Wheeler Company, a Connecticut corporation formerly doing business in New Haven and hereinafter called *the company,* was adjudged a bankrupt as of October 1st, 1903. The fund in dispute here is the proceeds of certain accounts originally owned by the company. The defendant Bronson, the trustee in bankruptcy of the estate of the company, hereinafter called *the trustee,* claims said fund as the property of the company. The other defendant, the First National Bank of New Haven, hereinafter called *the bank,* a corporation organized under the laws of the United States, claims said fund as the proceeds of accounts of the company assigned to the bank by the company as security for money advanced before the adjudication in bankruptcy.

In December, 1903, the trustee and the bank entered into a contract, the substance and effect of which may be stated as follows: The trustee was to collect all the accounts assigned to the bank, where the particular loans for which said accounts were primarily assigned had been fully paid. A list of said accounts was annexed to said contract and

marked Schedule *A*. The money so collected, less the reasonable cost of collection, was to be deposited in a designated trust company in the name of "Fred B. Bunnell, Trustee under Schedule *A*," to hold in trust until it should be determined by the courts to whom the money belonged. The bank was to collect all accounts where the particular loans for which said accounts were primarily assigned had not been fully paid. A list of said accounts was annexed to the contract, and marked Schedule *B*. The money so collected, less reasonable costs of collection, was to be deposited in the designated trust company in the name of "Fred B. Bunnell, Trustee under Schedule *B*," to be held in trust until the courts should determine to whom the money belonged. The contract contained a provision that it was made "without prejudice to the rights of either party, and that no rights which either party hereto has to either of said accounts shall be waived, lost, or affected in any way by reason" of said contract. It contained other provisions which it is unnecessary to notice here.

On the 16th of May, 1904, Bunnell held in trust under Schedule *A* the sum of $428.17; and under Schedule *B* the sum of $4,294.60; and on that day he brought the present action to have the title to said money determined. Each defendant claimed all of said money. The trial court adjudged that the Schedule *A* money belonged to the trustee, and about this no complaint is here made. This appeal is concerned solely with the action of the court in adjudging that the Schedule *B* money belonged to the bank.

The controlling question in the case relates to the validity of the assignments under which the bank claims the fund. The facts bearing upon this question, as stated in the record, are somewhat numerous and complicated, and cannot well be condensed into any briefer statement than the following: In 1897 the bank agreed to loan the company money on its demand notes, for which the company agreed to furnish the following considerations, to wit: its notes promising to repay the money; six per cent. interest; a two per cent. commission on the amount of each loan; to assign accounts as

security for the payment of the notes, and in case such accounts were not paid within four months, the balance on the loan was to be paid by the company and the loan retired. The commission was given partly because the company did not have such credit as to enable it to borrow without offering special inducements, and partly because the taking of the accounts as security involved on the part of the bank extra bookkeeping in entering payments on a number of small accounts, computing interest, sending out notices, and performing other labor.

In these transactions, and pursuant to said agreement, the course of business was as follows: When the company needed money it arranged for a loan from the bank, and prepared a note, on the form furnished by the bank, called the collateral note form. The company also prepared a list of accounts to be given as security for the loan, which accounts were against persons or concerns who had bought goods of the company, and said list was annexed to said note. The promissory note, called the collateral note, given by the company to the bank at the time of each loan, contained in substance the following provisions: It was made payable on demand after date, to the order of the bank, with interest at the rate of six per cent. per annum; it recited that the company had deposited with the bank, "as collateral security for the payment" of said note, or of any other liability of the company to the bank, present or future, "the following property, viz: accounts duly assigned, as per list attached," with full power to sell or assign said accounts in whole or in part, at public or private sale, "on the nonperformance of this promise, or the nonpayment at maturity of any of the other liabilities aforesaid, or at any time or times thereafter, without demand, or payment, advertisement or notice of sale, which are hereby expressly waived," and, after deducting expenses of sale, to apply the proceeds to pay the liabilities of the company to the bank, and return the overplus, if any, to the company. The note contained other provisions not necessary to be stated here. The list of accounts attached to the note showed the name of the person or concern owing each account, the

address of such person or concern, the date of the maturity of the account, and its amount.   With the note and list of accounts, came an invoice of each account in said list, signed by the company and addressed to the debtor, stating the terms of sale, and the fact that the goods had been sold on account of the bank and that payment must be made directly to the bank.   With each invoice, also, there went a type-written letter upon the paper of the bank, prepared by the company but signed by the bank, addressed to the debtor, stating that the invoice of goods was inclosed, and request-ing the debtor to remit directly to the bank.   The note with the list of accounts, the invoices and letters were delivered to the bank, and it then placed to the credit of the company the amount of the note, and said amount was at once with-drawn by the company.   On the same day the bank mailed to the debtor the appropriate invoice, with the correspond-ing letter signed by the bank, in one of the bank's envelopes, bearing its name and address.

Whenever the company delivered such a note and list to the bank, it credited each debtor whose account appeared in said list on its sales ledger with the amount of the account in question, which credit showed a transfer and not a pay-ment; and the company then transferred said accounts to its transfer ledger, on which all accounts assigned as secu-rity to any bank were entered, and there they remained until paid.   When the company assigned to the bank for the first time the account of a customer, it wrote to him a letter ad-vising him of the assignment, and inclosed to him a duplicate of the invoice delivered to the bank.   At the beginning of each month the company forwarded to each debtor a state-ment of his unpaid account, whether such account had been assigned or not; and with such statement the company fre-quently sent requests that the debtor remit, sometimes ask-ing that the remittance be sent to the bank and sometimes to the company.

" Throughout the entire course of business some of the debtors paid their assigned accounts to the bank by their own check ; some sent their checks to the company, but payable

to the order of the bank, and the company delivered such checks to the bank ; in other instances the debtors sent their checks for their accounts to said company, payable to the order of the company, and the company indorsed such checks and delivered them to the bank ; in still other cases the debtor's check thus made payable to the order of the company was retained by the company, and the company in most cases sent its own check to the bank, but in some cases retained such payment for its own use, without the bank's knowledge. Quite frequently a debtor sent to the company his note, usually for an amount greater than his particular debt assigned to the bank, and the company usually discounted such note elsewhere than at the First National Bank, and then paid over to said bank the amount of the account which it held. During the year prior to the bankruptcy most of the payments to the bank were made by checks of the company. The bank made inquiry of the company as to the payments made on the accounts otherwise than by the debtor's checks to the bank's order, and was informed by the company's officers that the debtor's checks were frequently sent to the company, for the purpose of having adjusted some claim of the debtor for freight, damaged goods, or merchandise not received. The debtors frequently sent to the company their notes when they were unable to meet their accounts at maturity, and from the proceeds of the discount of these notes the payments to the bank were made.

" The company was never authorized or requested by the bank to make any collections on the assigned accounts in the bank's behalf ; but when the company received payments on such accounts, and the bank made inquiry as to how it happened, the explanation from the company to the bank was based on some one or the other of the situations heretofore referred to, and the bank accepted them as proper explanations, and raised no question about them. . . .

" On October 1st, 1903, the date of the adjudication in bankruptcy, said bank held thirty-seven of the said notes of the company secured by accounts, no one of which notes had been fully paid. At the time when said thirty-seven

notes were respectively delivered to the bank said company received in cash from the bank the face value of each note, and said company at the same time turned over to the bank in the manner heretofore described the several lists of accounts respectively attached to said notes, and enumerated in Schedule *B*. . . .

" Said bank immediately gave notice to each debtor whose account was so assigned of such assignment, and the account so assigned and turned over was in each case then transferred from the company's sales ledger to its transfer ledger. In making the agreement aforesaid, and in carrying out the transactions hereinbefore mentioned, said bank and said company acted in the utmost good faith.

" It was not proved that the assigned accounts enumerated in Schedule *B* annexed to the complaint were to be collected by said company, or that the bank authorized said company to retain control over said accounts, or suffered said company to make such collections, or retain such control, in any way or to any extent other than such as has been hereinbefore set forth ; and it is expressly found that each debtor was immediately notified in writing when his account was assigned. . . .

" The turning over or assignment of each account to said bank was upon a good and valuable consideration ; the transaction was in each instance in writing, and in each instance notice was immediately given to the debtor. Each sale of merchandise was a transaction complete in itself between said company and the customer, and said company made out the invoice of such transaction, and turned it over to the bank, as hereinbefore set forth. It was not proved that there was in any case an assignment or transfer of a part of an invoice. In no case was such an invoice or sale split up. The transfer to the bank was in each case a transfer of the whole of a particular invoice. In each case the debtor had immediate notice of the transfer, and it was not proved that any such debtor ever made an objection or protest, but rather an assent might be fairly inferred from the number and frequency of the transactions without protest between the date of the agreement in 1897 and the date of the bankruptcy."

Said company remains indebted to said bank on said thirty-seven notes to the amount of more than $9,000.

Upon the facts thus found the trial court held that the Schedule *B* money belonged to the bank. The trustee claims that the trial court, in reaching this conclusion, overruled certain claims of law made by him. They were not in terms overruled, but some of them were in effect overruled; and such of these as merit notice will be briefly considered.

The trustee says the court overruled his claim that "a trustee in bankruptcy occupies the same position as an attaching creditor"; but this is not so. That claim was in effect conceded by the court and was expressly conceded by the bank. As the representative of creditors, a trustee in bankruptcy under our law, like a trustee in insolvency, may undoubtedly avoid conveyances and assignments which the bankrupt or insolvent could not avoid. *Shipman* v. *Ætna Ins. Co.*, 29 Conn. 245; *Newtown Savings Bank* v. *Lawrence*, 71 id. 358; *Curtis* v. *Lewis*, 74 id. 367.

The trustee claimed that "there were no completed and valid assignments" to the bank of the accounts in Schedule *B*. This claim finds no support in the record. Upon the facts found the trial court was amply justified in holding that said accounts had been duly assigned to the bank by way of security for money loaned at the time of the assignment; and that, to the extent of its interest in the assigned accounts, the bank was the bona fide owner thereof as against attaching creditors or others claiming under the company. *Smyth* v. *Ripley*, 33 Conn. 306; *Metropolitan Life Ins. Co.* v. *Fuller*, 61 id. 252, 262; *Devine* v. *Warner*, 76 id. 229, 235; *Gaffney* v. *Tammany*, 72 id. 701, 703; *Carroll* v. *Weaver*, 65 id. 76, 81; *City Bank* v. *Thorp*, 78 id. 211, 218; 4 Cyc. p. 66.

The trustee also claimed that "there was no proper notice given to the debtors of the alleged assignment of accounts" to the bank. The finding sets out the form of the notice of assignment given by the bank to the debtors, and states that, with respect to the Schedule *B* accounts, each debtor

Bunnell *v.* Bronson.

was immediately notified of the assignment. The court was amply justified in holding that such notice made the assignment, if otherwise valid, good, even as against attaching creditors and the trustee as their representative. *Bishop* v. *Holcomb,* 10 Conn. 444; *Fanton* v. *Fairfield County Bank,* 23 id. 485; *Whitman* v. *Winchester Repeating Arms Co.,* 55 id. 247. The trustee further claimed that the company had made certain partial assignments of accounts or invoices to the bank; that is, had split up an invoice or account, and assigned one part of it to the bank and one part to some other creditor of the company. The court finds expressly that no such assignment was made.

The trustee claims that the bank, by its conduct in reference to the assignments made to it by the company, is estopped from denying that the accounts were to be collected by the company.

This claim is based upon the facts found, to the effect that quite frequently, during the time covered by the dealings between the company and the bank, assigned accounts were sometimes paid to or collected by the company; but it takes no account of the other facts found upon this point which serve to explain or justify the conduct of the bank. In reference to the accounts in Schedule *B*, the court has expressly found that it was not proved that they were to be collected by the company, or that the bank authorized it to retain control over said accounts, or suffered the company to make such collections, or retain such control, in any way or to any extent other than such as is set out in the finding. We think the court properly overruled the claim of estoppel.

Upon substantially the same facts on which the foregoing claim of estoppel is based, the trustee claims that the assignments of the accounts here in question were constructively fraudulent, and therefore voidable as to him.

This claim finds no support in the record. The court has found expressly that in making the agreement for giving the company a line of credit, and in all that they did under it, the bank and the company "acted in the utmost good faith."

For each of the accounts in Schedule *B* assigned to it by the company, the bank advanced to the company valuable and adequate consideration, and it is not found that any of said accounts ever came again into the possession of the company or that it retained any control over them. Upon the facts found we think the court below properly held that said assignments were not even constructively fraudulent. These are all the claims of law that require consideration.

Two rulings upon evidence are assigned for error. The trustee offered an expert accountant as a witness, who would testify, solely from an examination of the books of the company, that the company was in fact insolvent about three years before October, 1903, and that the amount of such insolvency regularly increased up to the time of the bankruptcy. The trustee claimed that the evidence was admissible upon the issue of fraud raised by him in his " answer and claim," but the court excluded it, and we think correctly. It was admitted that the company was now insolvent and in bankruptcy. The trustee did not claim, nor offer to prove, that the bank had any knowledge of such technical insolvency, nor even that the company had such knowledge; and without such knowledge, the bare fact of insolvency, neither standing alone nor taken in connection with the other facts proved, tended to prove fraud either in the bank or the company. Besides, the fraud charged was not actual fraud dependent upon the existence of knowledge, motive, intent, and other mental and moral conditions; it was "constructive fraud" so called; that is, not fraud at all. The so-called fraud charged was simply the conduct of the bank, acting in the utmost good faith, in permitting the company to deal with and collect accounts which it had assigned to the bank as security for money loaned. Manifestly, the mere fact that the company was either solvent or insolvent, when the bank permitted it so to deal with the assigned accounts, had no legitimate tendency to prove or disprove that conduct.

The trustee offered a witness to show the amount of the

assets of the company that had come into his hands, and the amount of claims thus far allowed against the company. The court ruled the evidence out on the ground that it was irrelevant to any of the legitimate issues raised by the inter-pleadings.  We see no error in this.

In the appeal in this case, in addition to the 18 assign-ments of error already considered, there are 126 requests to correct the finding of facts.  In these requests this court is asked, in effect, to substitute for the finding made by the court below the trustee's draft of proposed finding.  Upon a careful examination of the record we see no occasion for changing the finding as it stands.

There is no error.

In this opinion the other judges concurred.