## THE PRESIDENT, DIRECTORS AND COMPANY OF THE CITY BANK OF NEW HAVEN *vs.* JOB THORP.

*First Judicial District, Hartford, May Term, 1906.

TORRANCE, C. J., HAMERSLEY, HALL, PRENTICE and CASE, Js.

For several years the plaintiff bank made repeated loans to a manufacturing company, taking as collateral security therefor assignments of its current merchandise accounts.    Written notice of each assignment was promptly given by the bank, with a request to the respective debtors to remit directly to it.    The manufacturing company, however, requested its customers to disregard the assignments and continued to receive payment of the assigned accounts, and the bank had no further communication with the debtors until the failure of the manufacturing company in October, 1903.    At that time there were several outstanding loans for

---

* Transferred from third judicial district.

which the bank held as collateral the accounts in suit, all of which had been paid by the defendant to the manufacturing company in good faith and in the belief that such practice had the sanction of the bank. *Held:*—

1. That the questions whether the bank had made the manufacturing company its agent for the collection of the assigned accounts, either actually or apparently, and whether it was estopped from denying the existence of such agency, were matters of fact for the final decision of the jury under proper instructions from the court, the determination of which depended mainly upon the further question of fact, whether the bank had knowledge of the doings of the manufacturing company in reference to these assigned accounts.

2. That upon the facts above stated, which were substantially those agreed to by the parties, knowledge could not be imputed to the bank as matter of law.

3. That the bank could not be considered as negligent in not demanding and enforcing payment of the assigned accounts, at least as between it and the debtors, as long as the loans for which they were given as security had not matured; nor was it negligent, upon the facts stated, in not learning the true condition of affairs.

Submitted on briefs May 3d—decided July 30th, 1906.

ACTION on assigned claims for goods sold and delivered, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the plaintiff for $811, and appeal by the defendant for alleged errors in the rulings and charge of the court. *No error.*

*Edward H. Rogers* and *Herbert W. Rathbun*, for the appellant (defendant).

*George D. Watrous, Harry G. Day* and *John W. Edgerton*, for the appellee (plaintiff).

HALL, J. The defendant complains in his appeal of certain rulings of the trial court upon questions of evidence, of the refusal of the court to charge the jury as requested, and of the instructions given to the jury. A proper understanding of the questions thus raised calls for a some-

what extended statement of the pleadings and rulings, and of the facts proved at the trial.

The complaint contains six counts, the first of which alleges that on or before the 12th of June, 1903, the E. S. Wheeler & Company, a Connecticut corporation located in New Haven, and which we shall refer to as *the company*, sold and delivered goods to the defendant at the agreed price of $148.63, payable sixty days after said date; that on said 12th of June, 1903, the E. S. Wheeler & Company, for value received, assigned in writing said claim against the defendant to the plaintiff, of which assignment the plaintiff on said day gave the defendant written notice; that said account is due and unpaid; and that the plaintiff is the actual and bona fide holder of said chose in action.

The five other counts are like the first, excepting that they describe subsequent assignments of accounts of different amounts, the date of the last of which is August 22d, 1903. The aggregate amount of the six assigned accounts is $840.17.

The first defense to the first count admits the allegation of the sale and delivery of the goods, and in effect denies the remaining allegations.

A second defense, as afterward amended and called a fourth defense to said count, and which will be so called hereafter, alleges, in substance, in paragraph 1, that the said account of $148.63 was assigned to the plaintiff by the E. S. Wheeler & Company as collateral security for a loan from the plaintiff to the company, made June 5th, 1903, and payable on demand, and made in consideration of an agreement that the latter would apply the proceeds of said account, when collected, on said loan, unless sooner paid by the company; in paragraph 2, that said assignment was one of a series of assignments of such accounts made by said company to the plaintiff during a continuous period of five years, as collateral security for loans by the plaintiff to the company, payable on demand, and in consideration of an agreement that the company would apply the proceeds of such accounts when collected on said loans, unless

sooner paid; that in all cases the company, before the loans to secure the payment of which said accounts had been assigned to the plaintiff had been fully paid, collected the accounts and paid the loans, and that the plaintiff "permitted, suffered, and authorized" the company to retain control over the assigned accounts so that it might collect them and so apply the proceeds thereof; that in no case did the defendant pay the plaintiff the accounts so assigned, but in each case he paid the company; and, in paragraph 3, that relying upon this course of business, the defendant was induced to believe, and did believe, that the plaintiff had permitted and suffered and authorized said company to retain control over and collect the account described in said count, and that, being so induced to believe, the defendant in good faith paid said company the full amount of the account.

A third defense to the first count alleges that the plaintiff appointed said company its agent to collect the account described in that count, and that the defendant paid it to such agent.

The plaintiff replied, denying the allegations of said third defense, and demurred to the fourth defense, which demurrer was sustained by the trial court; and upon a subsequent trial to the jury there was a verdict and judgment for the plaintiff upon all the counts of the complaint.

Upon the defendant's appeal to this court it was held, among other things, that the trial court erred in sustaining the demurrer to the fourth defense, and the judgment was set aside and the case remanded. *City Bank* v. *Thorp*, 78 Conn. 211, 61 Atl. 428.

Said demurrer to the fourth defense was thereupon overruled by the trial court, in accordance with the decision of this court upon said appeal, and the plaintiff thereupon filed a reply denying the allegations of paragraphs 1 and 2 of said defense.

As the same three described defenses were made to each count of the complaint, and the pleadings to these defenses and the rulings upon them were the same as to each count,

attention need only be called to the pleadings and decisions upon the first count.

Upon the second trial of the case to the jury the parties stipulated that certain facts should be taken as proved without the introduction of evidence. Those stipulated in behalf of the plaintiff were in substance these : The several accounts against the defendant, stated in the six counts of the complaint, were respectively assigned by said company to the plaintiff on the dates named in the complaint, by writings, each signed by an officer of the company, and each containing a statement of the amount of the account assigned, without the items thereof, of the time when the account would be due, and the following statement : "Sold for account of the City Bank of New Haven, New Haven, Conn. Settlement to be made only by remittance direct to them." Each of said assignments was made as partial collateral security for a separate loan by the plaintiff to said company, the amount now due upon each of which loans exceeds the amount of the account assigned to secure it. On the day that each assignment was made, the plaintiff sent to the defendant the original assignment, and a letter saying : "We inclose invoice of The E. S. Wheeler & Co. for [stating the amount of the account assigned] assigned to us, for which please remit at maturity direct to this bank," and signed by the cashier of the bank. "None of said accounts have been paid to the plaintiff, and the plaintiff is now the equitable and bona fide holder of each of the same, unless the facts proved by the defendant constitute a defense to this suit."

In behalf of the defendant, the stipulated facts briefly stated were these : The assignments of accounts named in the several counts were made as part collateral security for separate loans, each of which loans was for a larger sum than the amount or the account assigned to secure it. A demand note was given by said company to the plaintiff for the amount of each loan which had remained unsecured from one to two weeks when an account was assigned to secure it. It was agreed between the plaintiff and Wheeler

& Company, that the former should credit upon each of said loans the amount of the account given to secure it, when paid, and that upon payment of any note the plaintiff's interest in the account given to secure it should cease. The assignments of the accounts in suit were part of a large number of similar assignments made during the period between January 13th, 1899, and July 12th, 1903, as collateral security for loans to the said company, not only of accounts for goods sold to the defendant, but to other parties, and some of which were assigned to secure loans from other banks. Each of said previous assignments made to the bank during said period was applicable to a particular loan, and all were in consideration of agreements that the plaintiff should credit, upon the loan which each assignment was made to secure, the amount of the account assigned to secure it, when paid, and that when any loan, or the note given by the company for any loan, was paid, the plaintiff should have no further interest in the account assigned to secure such note or loan. On the date of each of said prior assignments, the plaintiff gave to the defendant notice thereof in the same manner that notice was given to him of the assignments in question, and which has been already described. During said period between January 13th, 1899, and July 12th, 1903, the defendant did not pay to the plaintiff any of the accounts so assigned to it, but paid all of them to said company, at the latter's request, and after the company had told the defendant to pay no attention thereafter to notices from the plaintiff of assignments of such accounts, but to settle directly with the company. Said company, prior to the payment of the loan or its note given therefor, paid to the plaintiff the amount of each account so collected by the company, and the sum so paid was credited by the plaintiff upon the loan to secure which the account was assigned. A transcript from the books of the company, made an exhibit at the trial, showed the transactions between the company and the defendant between January 13th, 1899, and June 12th, 1903, including the number, date, and amount

of the loans, and of the accounts assigned, and when the latter were due ; the date and amount of payment of each account and by whom collected ; the date of payment of each loan ; and the date and amount of payment of account to plaintiff.    It appeared that one account of $129.05, assigned to secure a loan, was paid to Wheeler & Company by the defendant's check payable to the order of the company and which the company indorsed to the plaintiff.    Other payments were made by the defendant to the company by its notes payable to its order, which it procured to be discounted at other banks than the plaintiff's.    During the period between January 13th, 1899, and July 12th, 1903, the plaintiff received no communication from the defendant concerning said assigned claims, and gave to the defendant no other notice than those above described.    Relying upon the course of business pursued by said company regarding the collection of the accounts assigned by them to the plaintiff bank prior to July 12th, 1903, and believing that the company had the same authority to collect the accounts in suit which it had to collect said prior accounts, the defendant in good faith and before the commencement of this action gave to said company his promissory notes, which were afterward paid by the defendant, for the full amount of the assigned claims in suit, and received from the company a receipt in full for said accounts.    Said company was adjudicated a bankrupt October 1st, 1903.

The above stipulation as to the facts in this case was made subject to the following claims which were stated to the jury: (1) " The defendant claims upon the facts and course of business admitted herein, that the plaintiff had and was chargeable with knowledge of said facts and said course of business, and that said The E. S. Wheeler and Company had by reason of said facts and course of business apparent or ostensible authority to collect from the defendant the accounts in suit, and that the plaintiff is thereby estopped to deny that it did not have actual knowledge of said facts and said course of business, and that the said The E. S. Wheeler and Company did not

City Bank *v.* Thorp.

have express authority from the plaintiff to collect the accounts in suit. (2) The plaintiff does not admit this claim, and reserves the right to object to the materiality and relevancy of the same in so far as the same may prove, or tend to prove, that the plaintiff had, and was chargeable with, knowledge of said facts and said course of business, and that the said The E. S. Wheeler and Company had apparent or ostensible authority from the plaintiff to collect the accounts in suit, and to offer evidence, if the court shall rule that the same is material, relevant, and competent, that the plaintiff did not have actual knowledge of said facts and said course of business, and that the E. S. Wheeler and Company did not have express authority from the plaintiff to make the said collections, including the collections shown in exhibit 6 [the transcript from the company's books]. (3) Either party upon the trial of said cause shall be at liberty to introduce such further evidence as may be material and competent."

Upon the trial Charles E. Curtis, vice-president and former assistant cashier of the plaintiff bank, testified as a witness for the plaintiff that he had personal knowledge of all the business between the E. S. Wheeler & Company and the bank, and that the book-keeping regarding it was done by him or under his supervision; that the company had a deposit account with the bank in which the company was credited with the loans make to it by the bank as above stated; that at various times by its check against such account, it paid to the bank sums equivalent to or covering the amount of the Thorp accounts, and that such payments were always so made, excepting that at one time the company indorsed to the bank the check of the defendant payable to the order of the company in payment of one of said accounts (as before stated) ; that the bank never authorized Mr. Wheeler or the company, or any one in its behalf, to collect the assigned accounts; that during the period of such assignments Mr. Wheeler did not under any appointment act as the bank's agent for any purpose whatever; that until the present suit was begun the bank

did not know that E. S. Wheeler or the company had solicited any payments from the defendant of such accounts, or that the defendant had given notes to the company for said accounts, or that the defendant had at any time intentionally disregarded the assignments, or that Wheeler or the company had ever notified the defendant to disregard the notices of assignments which might be sent by the plaintiff; that when the company paid the bank the amount of any Thorp account, the bank supposed that Thorp had been slow in payment and that the company was taking up the accounts, and that in making such payments the remark would be made, "I will take up such and such an account"; that the only reason why the plaintiff did not request payment of the defendant of these accounts during said period, was that the bank regarded the accounts as collateral to be collected if the principal failed to respond to the loan.

This testimony was received against the defendant's objection that it was irrelevant and not within the issues, and because, upon the facts admitted by the stipulation, the plaintiff was chargeable with knowledge of the course of business pursued, and was estopped from denying it, and from denying the agency of Wheeler or the company.

The defendant appears to have offered no evidence except the stipulated facts.

The defendant requested the court to charge the jury in substance: That the admitted facts were a defense to the suit; that it appeared from such facts that the plaintiff made the company its ostensible agent to collect the accounts in suit; that the defendant was justified in inferring from the plaintiff's conduct that he might pay the assigned accounts directly to the company; that the acts of the company, and the payment by the defendant of the accounts in suit, were binding upon the plaintiff, even if the plaintiff had conferred no actual authority upon the company to make the collections; and that the negligence of the plaintiff in not demanding payment of the accounts

assigned between January 13th, 1899, and July 12th, 1903, as they matured, and the receipt from the company of the amount of the accounts before the loans were paid, estopped the plaintiff from denying that it had knowledge of the collection of the accounts by the company. These requests were refused.

The court charged the jury that it was admitted by the stipulation that the allegations of the complaint were true; and, after referring to certain allegations of the fourth defense which the court said were admitted to be true, said in part: " Now comes what is in controversy : that the plaintiff, that is the bank, during all said period permitted, suffered, and authorized the said E. S. Wheeler and Company to retain control over said assigned accounts, so that the said E. S. Wheeler and Company might collect the same and apply the proceeds thereof in payment of said loans as they matured. That allegation is where the parties come to the issue, and that allegation is the one, and practically the only one, in the case for your decision. . . . . But unless it be true that the bank permitted, suffered, and authorized the said The E. S. Wheeler and Company to retain control over said assigned accounts, so that the said E. S. Wheeler and Company might collect the same : unless that allegation is true, although the rest of the allegations of the defense are admitted, unless that allegation is proved, the whole defense must fail. . . . The burden of proof is upon the defendant, and he must satisfy you by a fair preponderance of testimony as to the truth of . . . this allegation, for this allegation is the one in issue before you. Did the bank within the meaning of this permit E. S. Wheeler and Company to act as its agent, you may say, in collecting of the defendant these accounts ? . . . The Supreme Court in passing upon this defense states that it is not essential to its effectiveness that express agency or authority appear. And I charge you that that is the law. That it is not essential that it should be proved by the defendant that the bank expressly authorized the E. S. Wheeler and Company to collect of the defendant

these accounts, or expressly authorized the defendant to pay to E. S. Wheeler and Company these accounts. It is enough that throughout a long course of similar dealings between the same parties the bank has invariably permitted the assignor of these claims to undertake and manage their collection, and that with full knowledge of the situation which must be imputed to it, on the facts set forth: that is, it must be imputed to it, on the face of the defense, not on the evidence here, but on the face of the defense, the question here being whether the facts set up in the defense are proved. The bank's attitude and conduct have been such as to warrant the defendant's honest belief in its continued sanction and approval of this course. Therefore, you may, if you cannot find, and there is no evidence here, I think, that can warrant you in finding, that the bank expressly authorized E. S. Wheeler and Company to collect of the defendant these accounts, you may go further, and ascertain whether the bank permitted, whether the bank in the first place, with knowledge of what was going on, permitted E. S. Wheeler and Company through this long course of dealing to collect these accounts, standing silently by and knowing it was done. In the first place, you are to see whether they did it with knowledge. Of course, if the facts show that the bank knew that E. S. Wheeler and Company through these transactions was collecting these accounts, there would be a strong case in support of this defense. . . . But the defendant's case does not rest there: does not necessarily require that he should prove this actual knowledge of this course of business by the bank. He goes further, and says that if he can prove the fact of that knowledge by the bank, or facts which should necessarily lead them to knowledge of this state of affairs, or if he can show that there was negligence, either by some act of the bank or by some omission on the part of the bank to act, by which he was misled into believing that the E. S. Wheeler and Company was their agent, if the bank held out E. S. Wheeler and Company, through some act or negligence or omission to act on their

City Bank v. Thorp.

part, as their agent, and he was misled thereby into accept-
ing him as such agent, then also he has made out his de-
fense; and that, gentlemen, I charge you to be true.    I
charge you that it is a well-established doctrine that if a
person by his words or conduct expressly or impliedly rep-
resents to another that a certain state of facts exists, and
thereby induces the other to act in reliance on said rep-
resentation, he will be estopped to deny the nature of the
truth of the representation to the other's prejudice; and
by the application of this doctrine an agency may be created
of rights by estoppel, irrespective of the actual intention,
and even though it may be conceded that there was no
agency in fact.    If a person knowingly permits another
to act for him in a particular transaction, or otherwise
clothes him, either intentionally or by negligence, with an
apparent authority to act for him therein, he will be estopped
to deny the agency as against third persons, who in good
faith, and in the exercise of reasonable prudence, deal with
the apparent agent, in the belief that his apparent authority
is real. . . . The bank claims . . . that although they knew
when the accounts were payable, it was not their duty to
collect those accounts, or their interest to collect those ac-
counts, because they held them merely as a collateral se-
curity for the payment of a note of E. S. Wheeler and
Company, and that, until that note of E. S. Wheeler and
Company became due and unpaid, it was not their duty or
their interest to collect, of the various commercial debtors
of E. S. Wheeler and Company, these debts which had been
assigned to them as collateral security; and . . . I think
I should say to you that there was no legal duty on the
part of the bank to collect those accounts when they be-
came due.    There was no legal duty upon them to collect
those accounts. . . . They (the bank) also say that the
fact that a check was given by the defendant to E. S.
Wheeler and Company to pay one of the assigned accounts,
and received by them, is not notice of what E. S. Wheeler
was doing continuously; that it was a transaction alone by
itself, and that if in the multitude of the bank's transac-

tions they noticed the fact at all, that Thorp had drawn a check payable to E. S. Wheeler instead of to them, yet that was notice of but a single transaction, which never was repeated, and that it did not, could not, give them a notice of what Wheeler was doing. . . . I have said, also, that occasions might arise where the bank had so acted through negligence that they had misled the defendant into this position. It must be something wrongful : something done by them, which has misled the defendant to his wrong. And upon this branch of the case what has the defendant shown? . . . He has shown that they did not collect these accounts when they became due ; but it seems to me that it was not the duty of the bank to collect these accounts when they became due, and that in [not] collecting them and in not notifying . . . Thorp that they were due, and demanding payment of him, they were not omitting any duty that they were obliged to or ought to perform toward Thorp. . . . And it seems to me, as far as that part of the case goes, I ought to charge you that the facts do not show any negligence, as far as the bank goes, which has misled Thorp into this situation in which he now finds himself, and I can only, it seems to me, I can only leave the case with you to find upon all these facts in the case whether the bank had knowledge of the transactions, of what Wheeler was doing, this continuous course of business on his part, of collecting these accounts, and paying them over to the bank. That is to say, you may consider whether that part, that part of the defense, the fourth defense, that the plaintiff during all of said period permitted, suffered, and authorized the said E. S. Wheeler and Company to retain control over said assigned accounts, so that the E. S. Wheeler and Company might collect the same, and apply the proceeds thereof in payment of said loans,—you may consider whether that has been proved by a fair preponderance of proof ; if it has been, you may find the issue for the defendant to recover his costs. If it has not been, then you must find the issues for the plaintiff."

In *Bunnell* v. *Bronson*, 78 Conn. 679, 63 Atl. 396, we

held that assignments similar to those in the case at bar were valid.

In the present case practically but one question is raised by the defendant's objections to evidence, his requests to charge, and his exceptions to the charge itself. Stated generally it is : Do the stipulated facts establish as a matter of law such an apparent agency between the plaintiff and the company, for the collection, by the latter, of the assigned accounts in suit, as justified the defendant in paying them to the company, and estopped the plaintiff from denying that the company was the bank's actual agent for making such collections.

The defendant seems to claim, first, that this question was determined in his favor by this court when we held on the former appeal that the demurrer to the fourth defense should be overruled (*City Bank* v. *Thorp*, 78 Conn. 211, 61 Atl. 428) ; that the bank itself then claimed that the allegations of the fourth defense, that the plaintiff " permitted, suffered and authorized " the company to retain control over and collect the prior assigned accounts, were not allegations of facts, but merely statements of legal inferences from the other facts averred, and that they were so regarded by this court.

We think this claim cannot be sustained. The claims of both parties regarding the character of these particular allegations were somewhat different at the former trial than at the present one. We sustained those of the defendant, that these were averments of facts, and upon that ground, mainly, held that the fourth defense was sufficient. What we said regarding the sufficiency of the fourth defense was, in substance, that it stated an uninterrupted course of dealing during the prior period, in similar transactions to those in suit, and involving the same parties, " not only *fully acquiesced in and approved by the bank, but directly invited by it*," including the collection of the assigned accounts by the company during that period " in each. and every case, regardless of any assignment and its attendant notice, all under the permission and authority of the bank " ; that the

defendant paid the accounts in suit, in the belief that the plaintiff had permitted, suffered and authorized the company to pursue the same course with these accounts that it had authorized and approved in the past dealings of the parties; and that we thought it clear that *these allegations if established* disclosed an apparent authority in the company to collect the accounts sued upon in the present case. The purport of our decision was, that upon proof of these alleged facts the plaintiff was chargeable with knowledge that in collecting these prior assigned accounts the company was assuming the right to control their collection, either by representing that it was acting as the plaintiff's agent, or in representing to the defendant that in his dealings with the company he might disregard the assignments.

But the plaintiff has failed to prove all the material allegations of this defense. Under the charge of the court, the jury has found that the plaintiff did not agree with the company that it might retain control over and collect these prior assigned accounts, and apply the proceeds thereof in payment of the loans, and that the accounts were not so collected by the company with the authority, permission, or knowledge of the plaintiff.

But irrespective of said former decision, the defendant claims, in effect, that without these allegations—that with the permission and authority of the plaintiff the company retained control over the assigned accounts, and that the collections were so made by the company with the permission and authority of the plaintiff—and with only those allegations of fact which are admitted to be true by the stipulation, the fourth defense is sufficient and has been established.

That defense becomes, then, in substance this: that the accounts in suit assigned· to the plaintiff for the purpose and upon the consideration stated in the stipulation, were paid by the defendant in good faith to the company in the manner above stated, and a receipt in full taken from the company upon such payment, in the belief that the company had been authorized to collect them; that such belief of the defendant was induced by the facts that for several

City Bank v. Thorp.

years immediately prior to the making of the assignments in suit, similar assignments had been made by the company to the plaintiff for similar purposes and upon similar considerations, and of which notice was given to the defendant; that in 1899 the company, without the knowledge of the plaintiff, informed the defendant that if he received any more notices from the banks of the assignment of accounts, not to pay any attention to them, but to settle with the company directly, and that thereafter at the request of the company the defendant paid to the company directly all the said accounts so assigned prior to those in suit; and the company paid to the plaintiff at the times, and in the manner already described, the amount of the accounts so collected, which amounts were applied by the plaintiff upon the loans to the company; that during said period the plaintiff gave the defendant no other notice than the notices of the assignments as before stated, and that the plaintiff received no communication from the defendant respecting the assigned accounts.

These facts furnish strong evidence of the allegation that the plaintiff in fact authorized the company to retain the control over said accounts so that the company might collect them for the plaintiff, or that the plaintiff knowingly permitted the company to collect the accounts for the benefit of the bank before the loans to the company had been paid. But the plaintiff's witness Curtis denied that the bank had given the company such authority or permission, or that the bank had knowledge that the company was assuming to have such authority, or that it was collecting the accounts before payment of the loans which they were to secure and in disregard of the terms of the assignments; and upon a fair submission of these questions to the jury, upon the evidential facts of the stipulation and the testimony of Curtis, they have decided that no such authority or permission had been knowingly given by the bank. Whatever weight we may think should have been given by the jury to the stipulated facts, this verdict is decisive of the question of whether the bank gave any actual authority to

the company to make the collections, or had actual knowledge that the company was collecting them before the loans were paid.

Upon the stipulated facts alone the plaintiff was not chargeable, as a matter of law, with a knowledge that the company was assuming authority to collect the accounts for the bank, or that they were being paid in disregard of the assignments, which would estop it from denying the authority of the company to make such collections. In the absence of actual knowledge of such facts, knowledge was not to be imputed to the plaintiff, as matter of law, that the company was assuming to act as its agent, or that the accounts were being paid in disregard of the assignments, unless the facts show that it was the moral duty of the bank to inquire into these matters, or that it was negligent in not learning the true state of facts. *Angle* v. *Northwestern M. L. I. Co.*, 92 U. S. 330, 342; Wade on Notice, §§ 5, 11.

No actual authority or permission having been given to the company to make the collections, we discover in the facts no reason why the plaintiff should have been apprehensive, or put upon inquiry, lest the defendant should innocently suffer some loss from a possible improper assumption of authority by the company, or why it was the plaintiff's duty to do anything more than it did in order to protect the defendant from loss.

First, it does not appear that the plaintiff ever had any reason to suppose that the company was representing itself to the defendant as the plaintiff's agent, nor indeed that the company did so represent itself. The facts that the notes and checks given by the defendant in payment of the accounts were payable to the company, and not to the plaintiff, and that upon payment of the accounts the receipt in full was given in the name of the company, and not of the plaintiff, and the fact that the company had told the defendant to pay no attention to any further notice of assignments but to settle directly with the company, indicate that the defendant did not understand that he was

dealing with the plaintiff through its agent, but was dealing with the company only.

Again, however convincing the facts may be as evidence that the plaintiff had actual knowledge that payments were being made in disregard of the assignments, they do not show that the plaintiff necessarily knew, or was chargeable, as a matter of law, with knowing, that the defendant was so making payment to the company. The plaintiff had no knowledge that the company had told the defendant to pay no attention to further notices of assignments. When the company with its own check paid to the plaintiff the amount of an assigned account, we see no reason why the plaintiff may not reasonably have believed, as it is claimed it did, not that the account had been paid to the company, but that the company was paying it, and " taking it up " ; or why, if it supposed the account had been paid to the company by the defendant, it may not reasonably have believed that the defendant had directed or trusted the company to make for him the payment to the bank, nor why it may not so have believed regarding the payment made by the company by the indorsement to the plaintiff of the defendant's check payable to the company's order.

Again, if the plaintiff, at any time during the period before the assignments in suit, had reason to believe that the defendant was paying the accounts to the company in disregard of the assignments, the bank knew that the defendant had been expressly directed not to make such payments. What further or different notice was the plaintiff required to give than that already given? With every new assignment of an account, including those in suit, another notice was given the defendant that the accounts must be paid directly to the bank. The facts did not require the bank to give the defendant any other notice. If after such notice the defendant saw fit to trust the company, and to believe its statement that he need pay no further attention to notices of assignments, and to disregard the notices which the plaintiff gave him, he did so at his own risk.

The court correctly instructed the jury that in failing to take any steps to collect the accounts when they became due, the plaintiff was not guilty of any negligence which could be said to have misled the defendant. While perhaps the company might have complained, if it had suffered any loss from the failure of the plaintiff to collect the accounts as they became due, yet as against the defendant the plaintiff was not required to resort to the collateral security for the payment of the notes, until there had been a failure of the company to pay the notes upon demand.

Upon the question of the burden of proof, and upon the law regarding apparent agency, or agency by estoppel, the charge of the court was correct and adapted to the facts before the jury.

There is no error.

In this opinion TORRANCE, C. J., HAMERSLEY and PRENTICE, Js., concurred.

CASE, J. (dissenting). In disposing of the former appeal of this cause (78 Conn. 211), there was no occasion to discuss the essential marks of distinction between an agency by estoppel and one which rests upon an apparent or ostensible authority. We were chiefly concerned with a pleading—the fourth defense—comprehensive enough to cover both, but which the trial court had removed from consideration as no defense at all, because in effect it failed to disclose an express agency. Indeed, had we not distinguished between its matters of fact and certain averments which more properly appear as mere statements of legal inference, we must have sustained the defense as really declaring an express agency, since it rested in part upon an allegation that the defendant was induced to his course by his " knowledge " that the bank had " authorized " the company to collect the accounts. The defense was reinstated, and upon the second trial invited proof by the defendant of either form of agency which it was obviously framed to cover : If it should appear that the bank had actual knowl-

edge of the company's transactions with him as alleged, an apparent or ostensible authority from it for the company's acts would also appear; if, on the other hand, there developed upon proof of the essential facts, circumstances and conditions surrounding the dealings of the parties— all consistent with the broad allegations of the defense— which made it apparent that the bank's position was such that it ought to have known what the company was doing, then the bank's protest that it did not in fact know, became immaterial, and could not excuse it. In that event, knowledge must be imputed to it of the company's acts and representations, and the defendant would have established an agency by estoppel.

Upon the retrial there was a formal stipulation to the truth of certain facts. This included a condensed tabulated history of all the accounts prior to those in suit, and it is largely from a careful study of this table that the actual course of business pursued by the parties appears. The salient features of their dealings may be summarized as follows: After securing a substantial loan from the bank, the company assigned to it in writing a Thorp account payable in sixty days as partial collateral security. These accounts were always for amounts much less than the corresponding loans, and the attendant agreement in each case was that when the account was paid by Thorp to the bank, the amount should be credited on the still outstanding loan for which it was a partial security. Immediate notice of the assignment, and a request that payment be made direct to the bank, was in every instance given in writing by the bank to Thorp. Before the maturity of the accounts, Thorp usually gave a two or three months note to the company, which the latter at once realized on by a discount at some other bank. Long after the expiration of the original sixty days, and even after the maturity and payment of Thorp's note, the company would pay to the bank the amount of the overdue account in reduction of its indebtedness on the loan,—the disproportionate balance of which indebtedness continued to remain unpaid for

a period ranging in different instances from a week to two months thereafter. It was also admitted that Thorp acted throughout in good faith, in the belief that the company was authorized to make collection of the accounts, and upon the company's representations to that effect.

It is obvious, of course, that the bank had actual knowledge that the loans remained unpaid at the maturity of the assigned accounts; that these accounts were never paid either at or after maturity by Thorp to the bank; that in every case a sum corresponding to the amount of the assigned account was in fact paid by the company to the bank after the account's maturity; that this sum was credited on the still unpaid loan which the account was assigned to secure; that the balance of the underlying loan remained unpaid when this credit was given. But while admitting that during this whole period the company was actually cancelling these overdue accounts, in each case before the underlying loan was paid, the bank rests upon the narrow proposition that it did not in fact know that the company was assuming to collect them on its behalf. In short, it is the bank's claim that it supposed the company either to be "taking up" in each instance, for its own protection, the account of a "slow debtor" and making itself good with the bank for a long overdue account; or that it was acting as Thorp's agent in receiving and turning over the money. Since these are not isolated instances, but form a continuous and unvarying practice, this claim necessarily implies that the bank either continued making these loans upon what its confessed knowledge and experience showed to be at least questionable security, or, while fully aware that payments of the accounts at maturity were regularly defaulted, acquiesced in the practical management and control of them by the company after repeated reason to believe that it, rather than Thorp, was the real delinquent.

With actual knowledge, therefore, of these irregular and suggestive methods, the bank not only invited their continuance by its silence, but permitted them to ripen into the settled custom of years, when for its own protection it

was bound by every principle of common prudence to inquire into their cause. "Whatever fairly puts a party upon inquiry in such a case is sufficient notice in equity, where the means of knowledge are at hand." *Angle* v. *Northwestern M. L. I. Co.*, 92 U. S. 330, 342.

I think the case falls clearly within the doctrine of *Bronson* v. *Chappell*, 12 Wall. (U. S.) 681, 683, and that upon the admitted facts the plaintiff was estopped to deny the authority of the company to collect the accounts on its behalf.

BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.